**M. Lee GALLENSTEIN,
Plaintiff–Appellee,**

v.

**UNITED STATES of America,
Defendant–Appellant.**

**No. 91–6327.**

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1992.
Decided Sept. 16, 1992.

requiring 100% of the farm property to be included in her deceased husband's estate. With 100% inclusion, taxpayer received a stepped-up basis for the entire property; and as a consequence, no taxable gain from the sale. This is a case of first impression.

## I. BACKGROUND

### A. The Facts

On July 11, 1955, taxpayer and her husband purchased real property in Kentucky for $38,500, derived from her husband's earnings. The property was held in joint tenancy with right of survivorship. On December 12, 1987, taxpayer's husband died and she became sole owner of the farm. On July 5, 1988, Gallenstein sold 73.6 acres of the farm for $3,663,650. Under the terms of the purchase contract, taxpayer received $800,000 of the total purchase price in 1988, the remainder to be paid in installments over five years.

On her 1988 federal income tax return, Gallenstein initially reported a capital gain from the sale of the real estate based on net proceeds received from the sale in the amount of $3,659,596 and an adjusted basis of $103,000 [1] with a resulting taxable gain of $3,556,596.

In May of 1989, taxpayer filed an amended federal income tax return for the 1988 tax year, reporting $1,838,685 as the adjusted basis for the property. This reduced the total realized gain from $3,556,596 to $1,815,725. Taxpayer therefore sought a refund of $105,395.

Gallenstein filed a second 1988 amended federal income tax return in August of 1989, on which she reported the full sale price of $3,663,650 as her adjusted basis in the farm property. This amount reflected an amended estate tax return filed by her husband's estate, claiming the full value of the property as includable in the decedent's gross estate. Because Gallenstein did not contribute toward the initial purchase of the farm in 1955, she received 100 percent of the property at the time of her husband's death. This resulted in a 100 per-

Richard G. Meyer (argued and briefed), James A. Dressman, III, Elizabeth G. Weber, Deters, Benzinger & Lavelle, Covington, Ky., for plaintiff-appellee.

Laura L. Klein, Asst. U.S. Atty., Lexington, Ky., Lawrence P. Blaskopf, U.S. Dept. of Justice, Tax Div., Gary R. Allen, Acting Chief (briefed), Kenneth L. Greene, Kenneth W. Rosenberg (argued), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for defendant-appellant.

Before: KEITH and SUHRHEINRICH, Circuit Judges; and CONTIE, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Taxpayer M. Lee Gallenstein prevailed in a tax refund suit against the United States. The government appeals, arguing that § 2040 of the Internal Revenue Code ("I.R.C.") [26 U.S.C. § 2040], as amended, which governs the value of jointly-owned property to be included in a decedent's estate for federal estate tax purposes, requires including only 50% of the value of certain farm property in the taxpayer's deceased husband's estate; and consequently, taxpayer can be taxed on the gain realized in the 50% not included in her husband's estate. Taxpayer contends that the district court properly interpreted I.R.C. § 2040 as

1. The record does not indicate how this adjusted basis was derived.

cent step-up in basis under I.R.C. § 1014 and no gain to her from the sale of property in 1988. *See* I.R.C. § 1001(a).[2] Based on this amended return, taxpayer claimed a tax refund of $115,152 for the 1988 tax year.

The Internal Revenue Service accepted taxpayer's first amended income tax return for 1988 and paid taxpayer $105,187 (adjusted downward by the IRS in the amount of $208,000 as a tax refund). However, the IRS denied Gallenstein's second amended return and claim of a tax refund for $115,-152, stating that pursuant to § 2040(b)(1) she could not receive a stepped-up basis for 100% of the property, but only for 50% of the property. Gallenstein brought suit in federal court, seeking a refund of federal income taxes, plus interest and costs.

## B. The Statute

In order to understand why this issue is being litigated, it is necessary to canvass the history of I.R.C. § 2040.

Originally § 2040 stated:

(a) General rule

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with right of survivorship by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of

such property as is proportionate to the consideration furnished by such other person: *Provided further,* That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants with right of survivorship and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants with right of survivorship.

Under the original § 2040, the decedent's gross estate included the entire value of all jointly-held property except to the extent that the survivor could establish that he or she did not acquire his or her interest in the property from the decedent for less than full and adequate consideration. In order to keep a portion of jointly-held property out of a decedent's gross estate, the survivor had to "track" the amount he or she had contributed to the purchase of the property. This section applied to spouses as well as other joint tenants and was known as the "Contribution Rule," which required tracking of who paid what in regard to joint interests.

In 1976, § 2040 was amended with the addition of subsection (b), which created a new rule for spousal joint interests and stated:

(b) *Certain joint interests of husband and wife*

(1) *Interests of spouse excluded from gross estate*

Notwithstanding subsection (a), in the case of any qualified joint interest, the value included in the gross estate with respect to such interest by reason of this section is one-half of the value of such qualified joint interest.

(2) *Qualified joint interest—defined*

For purposes of paragraph (1), the term "qualified joint interest" means any interest in property held by the decedent

---

**2.** Pursuant to I.R.C. § 1001(a), gain or loss on the sale or exchange of property is computed by

subtracting the taxpayer's adjusted basis therein from the amount realized.

and the decedent's spouse as joint tenants or as tenants by the entirety, but only if such joint interest was created by the decedent, the decedent's spouse, or both, in the case of personal property, the creation of such joint interest constituted in whole or in part a gift for purposes of chapter 12, or in the case of real property, an election under section 2515 applies with respect to the creation of such joint interest, and in the case of a joint tenancy, only the decedent and the decedent's spouse are joint tenants.

The effective date of the 1976 amendment stated that it "shall apply to joint interests created after December 31, 1976." Thus, between 1977 and 1981, when the statute was again amended, the law was that for spousal joint interests created pre–1977, the entire value was included in a husband's gross estate if he was (as was true in the present case) the first to die and had provided the sole consideration for the property, but for qualified joint interests created post–1976, only one-half of the property was included in the "first-spouse-to die's" estate no matter who had provided the consideration for the purchase of the property.

In 1978, subsections (c), (d), and (e) were added to § 2040 to provide for an opportunity for an election so that joint interests created prior to 1977 could be treated as "qualified joint interests," qualifying for the 50% inclusion rule.[3]

The law again changed in 1981. The 1981 amendments, which were part of the Economic Recovery Tax Act of 1981 ("ERTA"), the sweeping tax reform legislation abolishing estate and gift taxes between spouses, changed § 2040(b)(2) to read:

## (2) *Qualified joint interest defined*

For purposes of paragraph (1), the term "qualified joint interest" means any interest in property held by the decedent and the decedent's spouse as—

(A) tenants by the entirety, or

(B) joint tenants with right of survivorship, but only if the decedent and the spouse of the decedent are the only joint tenants.

This amendment thus no longer required that gift tax be paid in order for a joint interest to qualify as a "qualified joint interest" that would be subject to the 50 percent inclusion rule of § 2040(b)(1). Sections (c) through (e), which had been adopted in 1978, were repealed by the 1981 amendments. The effective date of the 1981 amendments stated that they were "applicable to estates of decedents dying after December 31, 1981."

### C. The District Court's Ruling

The district court, upon recommendation of the magistrate, found that the effective date of the 1981 amendments did not repeal the effective date of the 1976 amendment. Since the 1976 amendment's effective date stated that it did not apply to joint interests created pre–1977, the district court concluded that because the joint interest at issue was created in 1955, the 1976 amendment, which created § 2040(b), the 50% inclusion rule for spousal joint interests, did not apply. The district court determined that since § 2040(b) does not apply to joint interests created pre–1977, the property at issue was controlled by § 2040(a), which indicates that 100% of the property should be included in Mr. Gallenstein's gross estate since he had paid the entire consideration for the purchase of the property. The dis-

---

**3.** In the Revenue Act of 1978, Pub.L. No. 95–600, Congress added subsections 2040(c), (d), and (e). To avoid the need for severance and re-creation of joint interests, new subsection (d) provided for an election to have joint interests created prior to 1977 treated as "qualified joint interests." The election required that a gift tax return be filed reporting a deemed gift, the amount of which was determined under a formula reflecting the respective contributions of the spouses when the interest was created, and any subsequent appreciation in the property's value. New subsection (e) provided that if a pre–1977 joint interest was nevertheless severed and recreated, it would be treated as a "qualifying joint interest" only if an election under subsection (d) was made. Finally, new subsection (c) allowed reduction of the amount included in the gross estate under § 2040(a) where the surviving spouse participated in a farm or other business. The relief available under subsection (c) was limited to 50 percent of the amount included in the gross estate.

trict court concluded that if 100% of the value of the property is included in Mr. Gallenstein's estate, plaintiff is entitled to a stepped-up, date-of-death basis for the entire property and should be given a tax refund for the capital gains tax she previously paid. The lower court therefore entered judgment in favor of Gallenstein in the amount of $115,520.

## II. ANALYSIS

■ The government argues that the new definition of "qualified joint interests" in subsection (b)(2) acts to repeal the effective date of subsection (b)(1), thus making the "50% rule" applicable to Gallenstein because her husband died after the effective date of December 31, 1981. The government pursues this claim along both an express and an implied repeal theory. We consider each argument in turn.

### A. Explicit Repeal

■ The government contends that § 2040(b)(2) expressly repealed the effective date of § 2040(b)(1) by changing the definition of "qualified joint interests."[4] The government's position is apparently that an express repeal of subsection (b)(1)'s operative date should be inferred from the alteration of subsection (b)(2) in the 1981 amendments. Ignoring for the moment the obvious non sequitur implicit in the government's position, it is not at all clear that the 1981 amendment of subsection (b)(2) necessarily must affect the operation of subsection (b)(1).

The government argues, however, that the term "qualified joint interest" in subsection (b)(1) is a term of art that must be defined by reference to subsection (b)(2). Under this theory, there was no need for Congress to expressly change subsection (b)(1) because by changing the definition of "qualified joint interest" in subsection (b)(2) Congress necessarily changed the effective date of subsection (b)(1).

■ Although inventive, this argument must fail because it essentially conflates express repeal with implied repeal analysis. An express repeal requires that Congress overtly state with specificity that the subsequent statute repeals a portion of the former statute. *See, e.g., In re Buren*, 725 F.2d 1080 (6th Cir.), *cert. denied*, 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984). When construing a general enactment and, within the same statute, a more particular enactment, the more specific should be given effect. *See United States v. Chase*, 135 U.S. 255, 260, 10 S.Ct. 756, 757, 34 L.Ed. 117 (1890). The government relies on this maxim to press for its interpretation of the statute. This canon of construction does not apply when the plain language of the two subsections can be reconciled without the need for the application of a general rule. *See Estate of Flanigan v. Commissioner*, 743 F.2d 1526, 1532–33 (11th Cir. 1984).

The government next argues that the legislative history of § 2040 indicates Congress' intent that the new definition of "qualified joint interest," coupled with the unlimited marital deduction, was intended

---

**4.** The taxpayer argues the government failed to raise the express repeal argument in the district court, stating that the government's motion for summary judgment was heard exclusively on an implied repeal theory. Taxpayer therefore argues that this failure to object precludes appellate review of the express repeal theory. *See Thomas v. Arn*, 474 U.S. 140, 147–48, 106 S.Ct. 466, 470–71, 88 L.Ed.2d 435 (1985); *Wright v. Holbrook*, 794 F.2d 1152, 1154–55 (6th Cir.1986).

This argument mistakes the failure to raise a *claim* below with the failure to make an *argument* in support of that claim. The government undoubtedly raised a claim that the 1981 amendments to § 2040(b)(2) changed the effective date for the "50% rule" of § 2040(b)(1) from "joint interests created after 1976" to "all

decedents dying after December 31, 1981." Whether this change was effected by an express or an implied repeal are simply alternative *arguments* in support of a single claim. The Supreme Court recently made this distinction abundantly clear, noting that "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, — U.S. —, —, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992); *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 78 n. 2, 108 S.Ct. 1645, 1650 n. 2, 100 L.Ed.2d 62 (1988). Having raised a claim of congressional repeal, the government can make any argument it wishes in support of that claim.

to simplify the statutory scheme by eliminating tracing for *all* qualified joint interests, not simply those created after 1976. In the legislative history, Congress stated explicitly that the 1981 amendment was intended to establish an easily administered rule that would eliminate the tracing requirement for surviving spouses. The legislative history also recognized that the tracing requirement, and Congress' prior attempts to address the problem, had given rise to undue complexity and unfair results. The government further argues that Congress' intent that the 1981 amendment should apply to all decedents after 1981 is confirmed by its express repeal of subsections (c), (d), and (e) of § 2040. Those provisions were designed to allow taxpayers to use the "50% rule" in certain instances. The government argues that Congress' express repeal of these subsections indicate that the "50% rule" was henceforth to be the exclusive rule for inclusion of joint property in a decedent's estate.

Far from indicating congressional intent to repeal subsection (b)(1), however, Congress' express repeal of subsections (c), (d), and (e) leads to the opposite conclusion. When Congress wanted to repeal a particular section of the estate tax code, it did so expressly. We should not provide by judicial interpretation what Congress did not expressly enact.

For similar reasons, the government's appeal to legislative history is inappropriate. "Legislative history is irrelevant to the interpretation of an unambiguous statute." *Davis v. Michigan Dep't. of Treasury*, 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891 (1989). "Unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'" *Burlington Northern R.R. v. Oklahoma Tax Comm'n.*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (citation omitted). We find the statute at issue here clear on its face. Congress enacted the plain language of the statute, not the accompanying legislative reports. Indeed, the use of legislative history to find an *express* (as opposed to an implied) repeal would be exceeding the judi-

cial role. "Adoption of [this practice] would require amendment rather than construction of the statute, and it must be rejected here." *Burlington Northern*, 481 U.S. at 463, 107 S.Ct. at 1861.

### B. Implied Repeal

■ The government next argues for an implied repeal. The rule against implied repeals states that "in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). Although such repeals by implication are not favored in the law, they are allowed under certain circumstances:

(1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) If the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the Legislature to repeal must be clear and manifest.

*Radzanower v. Touché Ross and Company*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976).

The statutory provisions at issue here cannot be characterized as being irreconcilably in conflict in the sense that there is a positive repugnancy between them or that they cannot mutually coexist. It is not enough to show that the two statutes produce different results when applied to the same factual situation, for that no more than states the problem. *Id.* at 155, 96 S.Ct. at 1993. 26 U.S.C. § 2040(b)(1) applies to a qualified joint interest created after 1976, and 26 U.S.C. § 2040(b)(2) redefines a qualified joint interest for estates of decedents dying after 1981. Neither statute prohibits the other from working. *Morton*, 417 U.S. at 551, 94 S.Ct. at 2483. ("When two statutes are capable of coexistence, it is the duty of the courts ... to regard each as effective.")

The basic purposes of Congress can be fairly served by giving full effect to the provisions of I.R.C. § 2040(b)(1). The primary purpose of the 1981 act was to create an easily administered rule for spousal joint interests. Allowing a "qualified joint interest" included in the estates of decedents dying after 1981 to be subject to the "50% rule" will give full effect to that section. Likewise, allowing the "100 percent contribution rule" for joint interests purchased prior to 1977 will not unduly impede the operation of § 2040(b)(1). This interpretation harmonizes the two subsections of the statute, as we are required to do. *Morton,* 417 U.S. at 551, 94 S.Ct. at 2483.

The second category of implied repeal is where the later statute fills the entire area of law such that the prior statute has no effect. The statutes at issue here are far from mutually exclusive in the manner necessary for such an assumption. Congress expressly made one subsection applicable to all decedents dying after 1981. Another subsection, applicable to interests created before 1977, allowed a different computation for purposes of calculating the estate's taxable income. These two subsections, while in some tension in cases where the property was acquired before 1977 but passed to a surviving spouse after 1981, as in this case, are not totally irreconcilable. The legislative history is not unambiguous enough to indicate direct repeal of § 2040(b)(1)'s operative date. "As we have observed before ... the purpose of a statute includes not only what it sets out to change, but also what it resolves to leave alone." *West Virginia University Hosp. v. Casey,* —— U.S. ——, ——, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68, 83 (1991). Despite the government's extensive discussion of legislative history, we find the fact that Congress chose not to change § 2040(b)(1)'s operative effective date dispositive of this case. *See Chiles v. United States,* 843 F.2d 367, 370 (9th Cir.1988). "When a literal interpretation of a statute is reasonable, we must be cautious in considering legislative history offered in support of a contrary opinion, 'especially when that statute is contained in the Internal Revenue Code.' " *Id.* (quoting *Feldman v. Commissioner,* 791 F.2d 781, 783 (9th Cir.1986)).

## III.

For the reasons stated above, we find that there is no express or implied repeal in this case. Accordingly, the judgment of the district court is AFFIRMED.