Jonathan D. KORSHIN, Petitioner–
Appellant,

v.

COMMISSIONER OF the INTERNAL
REVENUE SERVICE, Respondent–
Appellee.

No. 95–1930.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1996.

Decided Aug. 7, 1996.

**ARGUED:** Benjamin Pratt Gasque, Jr., Myrtle Beach, South Carolina, for Appellant. Sarah Kay Knutson, Tax Division, United States Department of Justice, Washington, DC, for Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Charles E. Brookhart, Tax Division,

United States Department of Justice, Washington, DC, for Appellee.

Before NIEMEYER and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge NIEMEYER and Judge WILLIAMS joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

In 1993, the IRS assessed a deficiency against Jonathan Korshin, requiring him to pay an addition-to-tax due to his negligent underpayment of income taxes for the years 1983 to 1988. Korshin petitioned the Tax Court, claiming that the IRS could not now assess this deficiency against him because the deficiency had arisen under statutes that had since been repealed. The Tax Court upheld the deficiency and Korshin appealed. Because the General Savings Statute, 1 U.S.C. § 109 (1986), preserves tax liabilities after the statute creating them has been repealed, and because it allows the IRS to collect those debts post-repeal, we affirm.

### I.

Korshin is an anesthesiologist who was born and grew up in the United States. In 1970, after finishing medical school, Korshin was drafted into the military. After finishing his military service, he moved to Copenhagen, Denmark, where he practiced as an anesthesiologist from 1973 to 1980.[1] In 1980, he returned to the United States—leaving a wife and children in Copenhagen—and he completed a residency at a South Carolina hospital. Korshin filed tax returns for 1981 and 1982.

After finishing his residency in 1983, Korshin began working as a fill-in physician at various hospitals. During the period from

1983 to 1988, Korshin earned between $70,000 and $100,000 annually, even though he worked only 30 to 32 weeks out of the year. Korshin did not file returns or pay any taxes during this period.

In 1990, Korshin came under criminal investigation for failure to file returns from 1984 to 1988. While under investigation, he filed returns and paid back-taxes for 1983 through 1988; Korshin eventually pleaded guilty to failure to file a 1988 return.

In 1993, the IRS sent Korshin a civil deficiency notice, claiming that, because he had negligently underpaid his proper tax from 1983 to 1988, he owed certain additions-to-tax for those years.[2] Korshin disputed this deficiency and petitioned the Tax Court for relief. The Tax Court agreed with the IRS, and held that Korshin had been negligent and did owe the deficiencies.

Korshin now appeals, arguing that (1) the Tax Court erred in finding that he was negligent in underpaying his taxes, (2) even if he was negligent, the court erred in allowing these deficiencies to be assessed at all, given that the statutes under which they arose are no longer in effect, and (3) that the court erred allowing the interest portion of the deficiency to continue accruing after 1988, when Congress eliminated the interest portion of the negligent underpayment addition-to-tax.

### II.

Korshin first argues that the Tax Court erred in affirming the IRS's determination that he was, in fact, negligent in failing to pay his taxes from 1983 to 1988. Because we agree with the Tax Court that Korshin failed to carry his burden of proving the incorrectness of the IRS's negligence determination, we affirm. *See Schrum v. Commissioner*, 33 F.3d 426, 437 (4th Cir. 1994) (taxpayer bears burden of disproving IRS's determination of negligent underpayment).

1. Korshin filed tax returns from 1970 to 1973.

2. The IRS claimed that Korshin owed the following amounts for the tax years in question: $1567 for 1983; $1037 for 1984; $1449 for 1985; $1623 for 1986; $1356 for 1987; and $1642 for

1988. In addition, the IRS claimed that, under the negligent underpayment provisions in effect for 1983–1987, Korshin owed substantial interest on the amount by which he negligently underpaid. JA 164.

■ As generally, "negligence" in the context of income tax underpayment denotes "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *Id.* Here, Korshin argues that his failure to pay taxes during these years was due to his belief that his deductible expenses would more than offset his income. Although his average yearly income over the period was over $90,-000, Korshin claims he believed that interest expenses from his house, his travel expenses in visiting his family in Denmark, and his support payments to his wife would completely offset his income, thus eliminating any tax liability. He further explains that he thought the IRS would just "bill him" for his tax debt, as the Danish government had done.

Even if Korshin's explanations for his failure to file are believed, they tend to show that, at most, he did not *intentionally* refuse to pay his taxes. They do nothing to rebut the IRS's determination that his underpayment was *negligent.*

### III.

### A.

■ Korshin next contends that, even if he was negligent in failing to pay his taxes from 1983 to 1988, he is not now subject to additions-to-tax based on that negligent underpayment. Specifically, Korshin contends that in 1993, when the IRS assessed the negligent underpayment deficiency against him, it could not base its assessment on repealed versions of I.R.C. § 6653, under which his additions to tax arose. Because later changes to or repeals of § 6653 did not affect Korshin's already-established tax liability for the years in question, or the IRS's power to collect that liability, *see* 1 U.S.C. § 109, Korshin's contention is meritless.

The I.R.C. provision under which Korshin's deficiencies arose is § 6653. Because this section was changed several times during the 80s, various versions of it applied to the tax years in question. The first version with which we are concerned came into effect in 1981. That version created a two-part addition to tax for negligent underpayment.

First, if any amount by which the taxpayer underpaid his taxes was due to his "negligence or intentional disregard" of the I.R.C, an amount equal to five percent of the underpayment was added to the tax debt. I.R.C. § 6653(a)(1) (1982 version). Second, that section assessed an additional charge equal to fifty percent of the amount of tax-code interest collectible on the portion of the underpayment that was due to negligence. § 6653(a)(2) (1982 version). This version of § 6653 remained in effect through 1985; accordingly, because Korshin was a calendar year taxpayer, it was applicable to his now-disputed tax returns for 1983 through 1985.

The provision was altered—effectively in form only—by the Tax Reform Act of 1986, Pub.L. No. 99–514, § 1503(a), 100 Stat.2085, 2742. The Act reworded § 6653(a)(1)-(2) and renumbered its provisions, recasting them as § 6653(a)(1)(A)-(B); but, it preserved the substance of the negligent underpayment provision. This 1986 version expressly applied to "returns the due date for which (determined without regard to extensions) is after December 31, 1986." Tax Reform Act § 1503(e). For calendar-year taxpayers like Korshin, the provision therefore took effect in tax year 1986, as returns for that year would not be due until April 15, 1987. Accordingly, this version of § 6653 applied to Korshin's delinquent returns for tax years 1986 and 1987.

Section 6653(1)(A)-(B) was again changed and renumbered in 1988. *See* Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub.L. No. 100–647, § 1015(b)(2)(A), 102 Stat. 3342, 3569. The 1988 version, which then appeared as § 6653(a)(1), eliminated the interest portion of the addition-to-tax; thus, if any portion of taxpayer's underpayment was due to negligence, new § 6653(a)(1) assessed only an addition equal to five percent of the underpayment. This provision was made applicable to returns due after December 31, 1988, TAMRA § 1015(b)(4); it therefore applied to Korshin's 1988 return.

Finally, in 1989 Congress reworked the addition-to-tax provisions altogether. *See* Improved Penalty Administration and Compliance Tax Act (IPACTA), Pub.L. No. 101–

239, 103 Stat. 2388 (1989). This act changed § 6653 into a "failure to pay stamp tax" provision, and it moved the negligent underpayment addition to § 6662(a). IPACTA § 7721(a), (c)(1). The 1989 changes were made applicable to returns due after December 31, 1989. *Id.* § 7721(d). These last changes are not, therefore, on their face applicable to any of Korshin's returns in question, the latest of which was for tax year 1988.

Given all the above, Korshin argues that the IRS may not now base its negligent underpayment additions on the various versions of § 6653 that were in effect from 1981 to 1988, but were later changed. Korshin phrases his argument in terms of express and implied repeal, contending that each successive version of § 6653 expressly—or at least impliedly—repealed the preceding one, thereby extinguishing any liabilities that arose from the old versions of the statute. We need not decide whether any of the acts discussed above worked to expressly or impliedly repeal the prior versions of § 6653, because even if they did, Korshin's liability under the old statutes would not be extinguished by their repeal.[3]

■ This result derives from the U.S.Code's General Savings Statute, 1 U.S.C. § 109 (1988). This section abolishes the common-law rule that repeal or amendment of a statute nullifies the old version of the statute as to pending proceedings. *Warden*

*v. Marrero*, 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383 (1974). It does so by providing that, unless Congress declares otherwise, a liability that arises under a later-repealed statute is preserved despite repeal and may be enforced by a post-repeal action:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.[4]

Section 109 applies squarely to this case.[5] As discussed in Part II above, Korshin was negligent in underpaying his taxes from 1983 to 1988. As a result, the versions of § 6653 in effect for those tax years imposed on him additional liability for those negligent underpayments; under the terms of § 109, then, Korshin "incurred" a "liability" under these various versions of § 6653. As the Supreme Court has explained, "[the predecessor of § 109] is not alone applicable to penalties and forfeitures under penal statutes. It extends as well to 'liabilities,' and a liability or obligation to pay a tax imposed under a repealed statute is not only within the letter, but the spirit and purpose of the provision." *Hertz*

---

**3.** In arguing the "express or implied repeal" point, Korshin relies heavily on a Sixth Circuit case, *Gallenstein v. United States*, 975 F.2d 286 (6th Cir.1992). That case is inapposite because, via a discussion of express and implied repeal, it resolved a dispute over which of two conflicting I.R.C. provision governed a certain taxable event. By contrast, the parties here agree on which of the various versions of § 6653 governed the treatment of negligent underpayments occurring in the years for which they were effective. *Gallenstein* simply did not deal with the real question here—whether repeal or amendment of a tax provision *after* occurrence of an event triggering liability under that provision bars the IRS from later seeking to collect the liability incurred under that repealed statute. Accordingly, Korshin's reliance on *Gallenstein* is misplaced.

**4.** Section 109 is not an absolute rule, but the recognized exceptions to it do not apply here. *See Hamm v. City of Rock Hill*, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964) (after passage

of Title II of Civil Rights Act of 1964, African-American sit-in protesters could not be prosecuted for pre-Act trespasses; Court held prosecution barred despite § 109 when Congress substitutes a "right for a crime"); *United States v. Chambers*, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934) (no prosecution for Prohibition violations after passage of Twenty–First Amendment).

**5.** The parties dispute whether the various versions of § 6653 were *repealed* or simply *amended*. We do not reach this question because, although § 109 specifically refers only to repealed statutes, it also applies to statutes changed by amendment. *See, e.g., United States v. Mechem*, 509 F.2d 1193, 1194 n. 3 (10th Cir.1975) (stating this rule); *Moorehead v. Hunter*, 198 F.2d 52, 53 (10th Cir.1952) (for purpose of § 109, whether statute was changed by amendment or repeal is "immaterial"); *United States v. Ettrick Wood Products*, 774 F.Supp. 544, 554 n. 15 (W.D.Wis. 1988) (same); *United States v. Taylor*, 123 F.Supp. 920, 922 (S.D.N.Y.1954) (same).

*v. Woodman,* 218 U.S. 205, 217–18, 30 S.Ct. 621, 624, 54 L.Ed. 1001 (1910).

Accordingly, unless any of the successive acts discussed above specifically provided for the extinguishment of existing liabilities for negligent underpayment, § 109 preserves those liabilities, despite the later alteration of the statutes under which they arose. We find no reference in those later acts to extinguishment of such liabilities; accordingly, the IRS may still enforce them against Korshin. *See Frey v. United States,* 558 F.2d 270 (5th Cir.1977) (Section 109 allows post-repeal enforcement of tax liability arising under former I.R.C. § 4741—the marijuana excise tax provision—for pre-repeal taxable marijuana sale), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1978); *see also Hertz,* 218 U.S. at 218, 30 S.Ct. at 624–25 (predecessor of § 109 preserved liability incurred under former federal inheritance tax statute, even though tax statute later repealed).[6]

An analysis of the practical effects of Korshin's position, were it accepted, further supports our rejection of that position. Korshin essentially contends that, when a statute imposing tax liability is repealed, all taxpayers who would have owed a tax debt under the old statute, but who have not yet paid that debt, are excused from paying that debt. Simply put, Korshin argues that repeal of a tax statute grants *amnesty* as to all delinquent debts stemming from that statute. As our sister circuits have noted, § 109 is intended to prevent precisely such a result: "We conclude that taken as a whole section 109 constitutes a comprehensive anti-abatement statute that embodies a Congressional policy of 'antipathy' to 'amnesty' by 'inadverten[ce].'" *United States v. van den Berg,* 5 F.3d 439, 443 (9th Cir.1993) (quoting *United States v. Uni Oil, Inc.,* 710 F.2d 1078, 1083 n. 3 (5th Cir.1983)).

■ We therefore conclude that even if, as Korshin contends, each new version of § 6653 repealed its predecessor, § 109 pre-

vents the repealer from extinguishing the liabilities Korshin incurred under the earlier versions of § 6653. Furthermore, § 109 also, by its terms, preserves the IRS's power to collect those liabilities: "[S]uch [repealed] statute shall be treated as still remaining in force for the purpose of sustaining any proper action ... for the enforcement of such ... liability." As Justice Frankfurter explained this portion of § 109, "By the General Savings Statute Congress did not merely save from extinction a liability incurred under the repealed statute; it saved the statute itself." *See De La Rama S.S. Co. v. United States,* 344 U.S. 386, 389, 73 S.Ct. 381, 383, 97 L.Ed. 422 (1953).

### B.

■ Likewise unpersuasive is Korshin's argument that, even if he is subject to the negligent underpayment addition, the interest portion of that liability should have stopped accruing in 1988 when the provisions authorizing it finally were eliminated. As explained above, the versions of § 6653 applicable to Korshin's returns for 1983 through 1987 imposed, along with the sum equal to five percent of the underpayment, interest on the amount of negligent underpayment, to begin accruing on the date the tax was due and to stop accruing on the date of assessment or payment, whichever occurred first. *See* § 6653(a)(2) (in force 1981–1985); § 6653(1)(B) (in force 1986–1987). In 1988, Congress eliminated the interest portion of the negligent underpayment addition altogether.

Korshin's contention, that the 1988 repeal of the interest portion caused that interest to stop accruing, is meritless. The interest portion of the addition is no less a "liability incurred under" the now-repealed versions of § 6653 than is the non-time-sensitive portion of that addition. To preserve this liability, as § 109 requires, the interest portions of these

---

6. Although both parties at argument expressed uncertainty as to whether § 109 applies in tax cases, we have found no case or statute excepting the I.R.C. from § 109, which, on its face, applies to "any statute" of the United States. Indeed, in *Marrero,* the Supreme Court concluded that § 109 preserved the efficacy of repealed I.R.C.

§ 7237(d)—which denied parole eligibility to certain narcotics offenders—as to prisoners sentenced before § 7237(d) was repealed. 417 U.S. at 663–64, 94 S.Ct. at 2538. We see no basis for implying such an exception to § 109's literal reach to "any statute" of the United States.

penalties must be given their full value as prescribed by the statute; the interest must therefore begin and stop accruing as the statutes specified.

### IV.

For the reasons stated above, the decision of the Tax Court is

*AFFIRMED.*