RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0129p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

LOUIS LEONOR,

    *Plaintiff-Appellee/Cross-Appellant,*

  *v.*

PROVIDENT LIFE AND ACCIDENT COMPANY; PAUL REVERE LIFE INSURANCE COMPANY,

   *Defendants-Appellants/Cross-Appellees.*

Nos. 14-2120/ 2152

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-15343—Robert H. Cleland, District Judge.

Argued: April 30, 2015

Decided and Filed: June 24, 2015

Before: MERRITT, BOGGS, and ROGERS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** K. Scott Hamilton, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellants/Cross-Appellees. Michael Max Jacob, Troy, Michigan, for Appellee/Cross-Appellant. **ON BRIEF:** K. Scott Hamilton, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellants/Cross-Appellees. Michael Max Jacob, Jeffrey D. Wilson, Troy, Michigan, for Appellee/Cross-Appellant.

_____

### OPINION

_____

ROGERS, Circuit Judge. This case arises from a dispute over three disability income insurance policies issued to Louis Leonor, a dentist licensed in Michigan. Each policy provided "total disability benefits" in the event that Leonor became unable to perform "the important

1

duties of [his] Occupation," or words to this effect. This appeal turns entirely on the question of whether the words "the important duties" necessarily mean "all the important duties." Whether use of the definite article before a plural noun implies the meaning of "all," however, depends on context, and the context of the policy language in this case permits a reading of "the important duties" that is not necessarily "all the important duties." Given this permissible reading, the district court properly ruled in favor of the insured.

Leonor suffered an injury that prevented him from performing dental procedures. At the time of his injury, he spent approximately two-thirds of his time performing dental procedures and approximately one third managing his dental practices and other businesses that he owned. After initially granting coverage, his insurers denied total disability benefits after they discovered the extent of his managerial duties. They argued that, because his occupation at the time of his injury included his managerial duties and because he could still perform those duties after his injury, he was not totally disabled under the policies. Leonor sued, alleging contract and fraud claims. The district court granted summary judgment to Leonor on his contract claim, holding that "the important duties" could plausibly be read to mean "most of the important duties" and resolving the ambiguity in favor of Leonor under Michigan law. The insurers appeal, arguing that "the important duties" necessarily and unambiguously means "all the important duties." The district court was correct that "the important duties" could plausibly mean something like "the major portion of the important duties" and that therefore Leonor was entitled to total disability benefits. The other issues raised on appeal and cross-appeal are either controlled by this determination or no longer contested.

Paul Revere Life Insurance Company issued policy number 0102450113 ("the 0113 policy") to Leonor on April 24, 1990. The policy provided benefits in the event that Leonor became totally disabled, defining "total disability" as follows:

"Total Disability" means that because of Injury or Sickness:

You are unable to perform the important duties of Your Occupation; and

You are under the regular and personal care of a physician.

"Your Occupation" is defined as "the occupation in which You are regularly engaged at the time You become Disabled." The policy provides reduced benefits in the event of "residual disability," defined as follows:

> "Residual Disability," prior to the Commencement Date, means that due to Injury or Sickness:
>
> (1) You are unable to perform one or more of the important duties of Your Occupation; or
>
> (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and
>
> Your loss of Earnings is equal to at least 20% of your prior earnings while You are engaged in Your Occupation or another occupation; and
>
> You are under the regular and personal care of a Physician.
>
> As of the Commencement Date, Residual Disability means that due to the continuation of that Injury or Sickness:
>
> Your Loss of Earnings is equal to at least 20% of Your Prior Earnings while You are engaged in Your Occupation or another occupation; and
>
> You are under the regular and personal care of a Physician.
>
> Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, if any.

Two disability policies with similar language but less at stake (policies 8090 and 2074) are also at issue in this case. These two policies contain language that is arguably more favorable to the insurers than the 0113 policy,[1] but the insurers explicitly decline to rely on language contained in those two policies but not in 0113. Appellant Br. at 12 n.5.

---

[1]Paul Revere issued a second disability insurance policy, numbered 0102748090 ("the 8090 policy") to Leonor on July 1, 1995. The 8090 policy differs from the 0113 policy in the following relevant respects:

1. "You are not engaged in any other gainful occupation" is added to the definition of "Total Disability;"

2. "You are not Totally Disabled" is added to the definition of "Residual Disability;" and

3. "Your Occupation" is defined as "the occupation or occupations in which You are regularly engaged at the time Disability begins."

Provident Life and Accident Company, owned by the same parent company as Paul Revere, issued a third policy, numbered 06-7912074 ("the 2074 policy") to Leonor on Dec. 20, 2002. The 2074 policy differs from the 8090 policy in the following relevant respects:

1. Instead of "important duties," the policy uses "material and substantial duties;" and

When applying for each policy, Leonor listed his occupation as "Dentist." Leonor alleges in his complaint that the insurers' agents stated that the policies covered his occupation—dentistry.

Prior to his injury in March 2009, Leonor worked essentially full time—35 to 40 hours per week—performing dental procedures. He also owned a number of dental practices and other businesses as investments, and spent approximately 15 to 25 hours per week managing and overseeing them. He earned approximately half of his income from these investments.

In March 2009, after cervical spine surgery, Leonor became unable to perform dental procedures. He remained able to manage and operate the businesses he owned, and after his injury he "more aggressively" sought out "investment opportunities in terms of purchasing dental practices." As a result of the success of these investments, his overall income increased after his 2009 injury.

Following his injury, Leonor claimed benefits for total disability under each of the three policies, and in July 2009 Provident and Paul Revere began paying Total Disability benefits under each. The insurers stopped paying Total Disability benefits under the two lesser policies in September 2010 on the ground that Leonor was engaged in another gainful occupation—managing his businesses. *See* n. 1, *supra*. In August 2011, the insurers stopped paying Total Disability benefits under the 0113 Policy on the ground that, at the time of his injury, Leonor's

---

2.  The definition of "Your Occupation" adds a reference to "the national economy": "the occupation or occupations, as performed in the national economy, rather than as performed for a specific employer or in a specific location, in which You are regularly engaged at the time You become Disabled."

In addition, Residual Disability is defined in the 2074 policy as follows:

Residual Disability or Residually Disabled means that You are not Totally Disabled, but due to Injury or Sickness:

1.      You are unable to perform one or more of the material and substantial duties of Your occupation; or You are unable to perform them for as long as normally required to perform them; and

2.      You are receiving Physician's care. . . .
        At the end of the limitation Period, Residual Disability or Residually Disabled also means:

3.      You incur a loss of Earnings while You are engaged in Your Occupation or Any Occupation.

occupation consisted of both his "Dental duties" and his "Owner/Operator duties." Leonor tried to use the insurers' internal channels to reverse these determinations, but failed.

Leonor filed suit in federal court on the basis of diversity jurisdiction against Provident and Paul Revere, alleging breach of contract and fraud under Michigan law. Leonor sought full Total Disability benefits as well as penalty interest of 12% per year under Mich. Comp. Laws § 500.2006(4). Provident and Paul Revere counterclaimed seeking reimbursement of Total Disability benefits paid before the insurers cancelled coverage. The district court dismissed Leonor's fraud claim on the ground that the fraud claim arose solely from the insurers' "alleged failure to fulfill a contractual obligation and not from a breach of a separate and independent duty," and that a breach of duty separate from a breach of contract was required to sustain a fraud action.

After discovery and cross-motions for summary judgment by Leonor and the insurers, the district court granted summary judgment to Leonor on his contract claim. With respect to the 0113 Policy, the court first determined that any reasonable jury would find that Leonor had been "under the regular and personal care of a Physician" since his injury. The district court then turned to the question of whether Leonor was "unable to perform the important duties of [his] Occupation" under the 0113 Policy. The court described Leonor's "Occupation" as "two thirds of his time spent performing dentistry and one third of his time managing and overseeing his practices." The court noted the insurers' argument that the definition of Residual Disability in the policy suggested that "the important duties of Your Occupation" in the Total Disability definition necessarily referred to "'all' of the important duties," and that a number of federal district courts located in other states had reached this conclusion. However, the court adopted the analyses of the Eleventh and Eighth Circuits to hold that the scope of the phrase "the important duties of Your Occupation" was ambiguous and could plausibly refer to fewer than all of the important duties. Following Michigan law, the court construed the ambiguity in favor of Leonor, the insured. The court therefore concluded that Leonor was Totally Disabled under the policy because he was unable to perform duties that had taken up two-thirds of the time spent in his pre-injury occupation.

The court next analyzed the 8090 and 2074 policies together. It applied its analysis of the 0113 policy to the "the important [or material and substantial] duties" and "under a physician's care" prongs of these policies' Total Disability definitions and found that Leonor had met these requirements.[2]

Finally, the district court denied penalty interest on the payments the insurers owed to Leonor. Applying Mich. Comp. Laws § 500.2006(4), the court ruled that the insurers did not owe penalty interest to Leonor because their interpretation of the policies was not plainly erroneous and so their dispute with Leonor was reasonable.

The insurers moved for reconsideration, arguing that the district court had failed to address their argument that, as a matter of grammar, "the important duties" has necessarily the same meaning as "all the important duties." The district court denied their motion for two reasons. First, the district court pointed out that the insurers had explicitly made the grammar argument only in reply to Leonor's response to their summary judgment motion, and not in their original summary judgment motion. Thus, the argument was forfeited. Second, the court noted that its original opinion had at any rate addressed the grammar argument, at least implicitly, by finding "the important duties" ambiguous and not equivalent to "all the important duties."

The insurers appeal, arguing only that the district court erred by finding the phrase "the important duties" ambiguous. In response, Leonor disputes the insurers' interpretation and also argues that the insurers had waived the crux of their argument—the grammatical unambiguity of the definite plural "the important duties"—by not raising it in their summary judgment motion. Leonor also cross-appeals, raising two issues. First, he argues that the district court should have awarded him penalty interest under the Michigan statute. Second, he argues that the district court erred in granting the insurers' motion to dismiss his fraud claim. Leonor's argument is that in the event that the policies do not entitle Leonor to Total Disability benefits—that is, in the event that the insurers prevail on the contract claim—their representations about the scope of coverage at the time that he obtained the policies amounted to fraud.

---

[2]The court also considered whether Leonor was engaged in "any other occupation," language particular to these two policies. The district court noted that Leonor was now engaged in managing the businesses he owned, which had, in the insurers' view, been part of his occupation prior to his injury. His present occupation was thus the same occupation, and not an "other occupation," so he could still be considered "Totally Disabled" under the 8090 and 2074 Policies.

Contrary to Leonor's argument, the insurers did not waive or forfeit the "grammar argument"—the argument that "the important duties" unambiguously means "all the important duties" by virtue of the use of the definite article "the". The grammar argument is an alternative argument for an issue that was properly raised before and decided by the district court: whether "the important duties" unambiguously means "all the important duties". In fact, grammar is a useful guide in any determination of a text's meaning. That the insurers failed to refer explicitly to grammar in their briefing before the district court does not prevent us from considering grammar in evaluating the policies' meaning. We have recognized a distinction between failing to properly raise a claim before the district court and failing to make an argument in support of that claim. *Gallenstein v. United States*, 975 F.2d 286, 290 n.4 (6th Cir. 1992). In *Gallenstein*, a party first unsuccessfully argued before the district court that a statutory provision had been impliedly repealed and then argued on appeal that it had been expressly repealed. *Id.* We permitted the novel argument: "Having raised a claim of congressional repeal, the [appellant] can make any argument it wishes in support of that claim." *Id.* The same logic applies here.

The policies' definition of Total Disability is ambiguous and can reasonably be understood to cover an injury that prevents the insured from performing most, if not all, of the important duties of her pre-injury occupation. This is all that Leonor needs to show in order to prevail. Under Michigan law, courts are to "construe [an insurance] contract in favor of the insured if an ambiguity is found." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 194 (Mich. 1999). "A contract is said to be ambiguous when its words may reasonably be understood in different ways." *Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 314 N.W.2d 440, 441 (Mich. 1982). Thus, for Leonor to prevail, his interpretation must be reasonable, but it need not be superior to the insurers'.

The language at the center of the insurers' appeal—"unable to perform the important duties of Your Occupation"[3]—is ambiguous as to whether it refers to all of the important duties or most of them. This conclusion results first from the fact that the definite plural, e.g., "the items", all does not necessarily mean "all the items". Of course, in context, the plain meaning of the items may mean "all the items", but in a different context, "the items" may mean "the items

---

[3]The 2074 Policy uses "material and substantial" in the place of "important," but the parties do not contend that this difference affects the application of that policy to Leonor.

as a whole", or may mean "many items" or "most items". The only rule of grammar that we can state confidently in this regard is that context determines whether "the items" means "all the items". Sometimes it does, and sometimes it does not. Second, the context of the term "the important duties" demonstrates that the words can just as easily be read to mean either "the important duties as a whole" or "most of the important duties", as to be read to mean "all the important duties." It follows that from Leonor's perspective the words in the policy are at worst ambiguous, and that under Michigan law the words must therefore be interpreted in his favor.

The definite plural may, in context, refer to the objects as a whole, rather than to each of the objects. Dictionaries, for instance, explain that the definite plural can denote "reference to the group as a whole." *E.g., Webster's Third New Int'l Dictionary, Unabridged* 2369 (1961). Of course a description of a group of things "as a whole" does not necessarily apply to each thing in the group. This is perhaps most clearly shown by the insurers' counsel's agreement at oral argument that his grammatical argument is "supported by the rules of grammar," even though his argument can hardly be said to be supported by *all* the rules of grammar. A further set of examples is adapted from Huddleston & Pullum, *The Cambridge Grammar of the English Language* 370 (2002):

   (a) The bathroom tiles are cracked.
   (b) All the bathroom tiles are cracked.
   (c) As a whole, the bathroom tiles are cracked.

Sentence (b) is true only if each and every bathroom tile is cracked. Sentence (c), on the other hand, can be true even if some tiles are not cracked, provided that the arrangement of tiles as a group makes evident extensive cracks. Sentence (a) is, in context, most likely to reflect the meaning of sentence (c), particularly if it is used to report a viewer's observation of the state of a bathroom's tiling, which would unlikely have involved the speaker's examination of each and every tile. Thus, "the concept of totality implied by the definite article is somewhat weaker than that expressed by universal quantification." *Id*.

These examples raise the possibility that "the important duties of Your Occupation" can in context plausibly be read to mean "the important duties (as a whole) of Your Occupation". Two features of the policies' language lead to the conclusion that the phrase can in fact bear this

meaning.  First, the set of important duties of Leonor's occupation was not precisely defined for either party when the policies were issued, suggesting that the policies did not focus on each and every important duty when it was not even clear what those duties were.  Second, nothing in the policies suggests that the parties anticipated that being able to perform some small percentage of Leonor's important duties would make much of a difference for Leonor in the event he was injured.

The definite plural can also refer, again depending on context, to "most," or "many," or even "some"[4] of the objects.  This can depend in part on how clearly the speaker and audience understand which objects are referred to.  The definite plurals in the following sentences provide an example:

(d) By reading the *Times* every day, you can learn about the important foreign policy issues facing the United States.
(e) By reading the *Times* every day, you can learn about the foreign policy issues discussed in each daily briefing presented to the President.

Sentence (d), on its face, claims that reading the *Times* every day will lead to a general mastery of foreign policy, but not necessarily to a mastery of each and every important foreign policy issue.  Because we know that reasonable minds could differ as to which foreign policy issues are important, the sentence would be unverifiable unless some exceptions were permitted, and thus less likely to be what the speaker intended.  Sentence (e), in contrast, claims that the *Times* discusses a particular, identifiable set of foreign policy issues and would be falsified by a showing that a foreign policy issue in the President's daily briefing is not covered by the *Times*.  In both cases, it is entirely possible that neither the speaker nor the audience can specifically identify which foreign policy issues the sentences refer to.  However, disagreements about which issues the sentences refer to are likely to be harder to resolve in the case of sentence (d).  In uttering sentence (d), the speaker is aware that the audience may have an irreconcilably different view of what the important issues are, and the audience is likely aware that the speaker is aware of this.  *See* C. Brisson, *Plurals, "All," and the Nonuniformity of Collective Predication*, 26 LINGUISTICS AND PHILOSOPHY 129, 137–38 (Apr. 2003).  As a result, in order to avoid

---

[4]The following example was raised at oral argument:  "It started to snow heavily.  The snowflakes stuck to his hair."  No one would interpret this to mean that "all" or even "most" snowflakes stuck to his hair.

contentious disagreement and misunderstanding, the speaker must admit exceptions to the general claim he or she makes. If all that is meant is that the important issues for the most part are found in the *Times*, then the speaker and audience can agree or disagree on the substance of the claim—that the *Times* generally has broad coverage of important foreign policy issues—without hashing out their potential differences over what the important issues are. Sentence (d), therefore, communicates much more effectively when the definite plural is not equivalent to "all". The context thus determines the meaning.

"The important duties of Your Occupation" functions similarly to the definite plural in sentence (d). "Important duties" is not defined in the contract and, at the time of contracting, the insurers did not even know precisely what Leonor's occupation would be if and when he became disabled, let alone what its important duties would be. There were no clear standards or guidelines for determining which duties were important in the event of a disagreement. Given the fuzziness of the set of things identified by the phrase "the important duties," the plain meaning of "You are unable to perform the important duties of Your Occupation" is at least plausibly a general statement about most of the important duties rather than an absolute statement about all of them.

This conclusion is bolstered by the likely purpose for using "You are unable to perform the important duties of Your Occupation" as a condition for total disability coverage—providing coverage in the event the insured must quit his profession entirely. To a far greater extent than the meaning of the universal quantifier "all," the meaning of the definite plural depends on pragmatic considerations. The following hypothetical situations illustrate the pragmatic flexibility of the definite plural:

> An excessively well protected bank safe is accessible only through a long series of individually locked doors.
>
> Situation 1: A bank teller needs to access the safe. Her manager says, "You need to get my keys, the doors are locked."
>
> Situation 2: At closing, all the doors must be locked before the alarm can be turned on. The manager says, "You can turn on the alarm, the doors are locked."[5]

---

[5]These situations are adapted from Sophia A. Malamud, *The Meaning of Plural Definites: A Decision-Theoretic Approach*, 5 *Semantics & Pragmatics* 3:8 (2012).

"The doors are locked" has a different meaning in the two situations even though each utterance refers to the same set of doors. In Situation 1, the teller would likely not be surprised to find a small percentage of the doors unlocked, while in Situation 2 the teller would be surprised (and annoyed) if a single unlocked door prevented the alarm from turning on. The difference is the purpose of saying "the doors are locked," which depends on the goals of the participants in the conversation. Sophia A. Malamud, *The Meaning of Plural Definites: A Decision-Theoretic Approach*, 5 *Semantics & Pragmatics* 3:8 (2012). In Situation 1, the keys are necessary so long as just one door is locked; whether most of the doors are locked or all of the doors are locked makes no difference to either the teller or the manager. In Situation 2, meanwhile, it is important for both parties that each door be locked. Thus it is possible to make exceptions to the set of things identified by a definite plural construction when both the speaker and the audience know that including absolutely all of the things is not important.

In the context of disability insurance, reading "unable to perform the important duties of Your Occupation" to refer to each and every important duty does not serve any apparent purpose of the parties. A person is unemployable in a particular profession so long as she cannot perform a substantial proportion of that profession's important duties. At that point, it does not matter whether there are a few important duties that she can perform, because she will still be unable to function in that profession. The insurers' proposed interpretation appears disconnected from the risk insured against—the possibility that injury will force the insured to quit his occupation. This analysis justifies the approach of the Eighth Circuit (applying Minnesota law) and the Eleventh Circuit (applying Georgia law). Those courts have held that "'most' or the 'majority' of the [important] duties is . . . a reasonable interpretation *if* an insured is unable to engage in his regular occupation as a result of his inability to perform most or the majority of those duties." *Giddens v. Equitable Life Assur. Soc. of U.S.*, 445 F.3d 1286, 1298 (11th Cir. 2006); *see Dowdle v. Nat'l Life Ins. Co.*, 407 F.3d 967, 968, 970 (8th Cir. 2005).

Leonor thus can reasonably be said to have become "unable to perform the important duties of [his] Occupation." Accepting for purposes of argument that Leonor's occupation consisted of performing dental procedures on a nearly full-time basis while additionally managing businesses he owned for 15–25 hours per week, Leonor was unable to engage in this

occupation after his injury.  He could engage in some of the activities of his occupation, but he was unable to perform the duties taking up a majority of his workweek and he was no longer engaged in his previous occupation or even an occupation closely resembling it.  This would make him "unable to perform the important duties of [his] Occupation" under the *Giddens/Dowdle* analysis.

Interpreting the scope of definite plurals as dependent on context serves to distinguish rather easily the precedents relied upon by the insurers.  For example, in *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 155 (3rd Cir. 2009), the Third Circuit applied a "total" reading of "the" in interpreting a statute governing federal class actions.  That statute required that the conduct of a local defendant form a "significant basis for the claims asserted by the proposed plaintiff class."  28 U.S.C. § 1332(d)(4)(A)(i)(II).  The claims asserted in a class action are discrete and readily identifiable, unlike the "important duties" of an occupation, and whether a defendant's actions give rise to any individual claim is of independent legal significance.  Similarly, the requirement in 28 U.S.C. § 1322(d)(4)(B) that federal courts remand removed class actions to state courts if, among other things, "the primary defendants are citizens of the State in which the action was originally filed" unambiguously refers to all primary defendants for contextual reasons.  *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 80 (1st Cir. 2009).  The primary defendants in a class action are readily identifiable, and the required absence of a single out-of-state primary defendant in order for the home-state exception to removal to apply is independently significant.  Especially in the context of federal diversity jurisdiction, where for generations one party could destroy diversity, "the primary defendants" must mean all the primary defendants.

That the insurance policies in the present case included a separate definition of "residual disability" that was less severe than total disability does not eliminate enough ambiguity to exclude Leonor from Total Disability coverage.  The insurers argue that the policies' use of "residual disability" as a distinct category characterized by the insured's inability to perform "one or more" important duty suggests that "total disability" must refer exclusively to the inability to perform all important duties.  As the Eleventh Circuit explained in *Giddens*, this is not the case; the presence of the residual-disability category only means that a totally disabled

individual must be unable to perform most, as opposed to some, of the important duties of her profession. Residual disability and total disability are two categories of disability occupying distinct sections of a "continuum of disability." *Giddens*, 445 F.3d at 1300. Because the two categories must be mutually exclusive for the policies to make sense, there must be some dividing line beyond which any additional degree of disability makes an otherwise residually disabled person totally disabled. *Id.* at 1301. But the presence of the residual-disability category in itself does not compel any particular conclusion about where the line should be drawn. *Id.*

The language of the residual disability definition provides some help to the insurers, but not enough. The bar for residual disability is low; one must be unable to perform "one or more" important duty. This suggests that the boundary with total disability must be significantly further along on the disability continuum, but it does not suggest exactly where it should be. *See id.* At most, the residual-disability definition rules out interpretations of "the important duties" in which that phrase refers to only a few of the important duties rather than a substantial number or proportion of them. Under such an interpretation, almost any time an insured meets the definition for residual disability, the insured also meets the definition for total disability, and the residual disability category comes close to being a nullity. But all that is required to avoid this is that the dividing line between total disability and residual disability leave significant space on the disability continuum for non-total, residual disability. Something along the lines of "most important duties" does this comfortably.

Thus under a reasonable interpretation of "unable to perform the important duties of [Leonor's] Occupation," Leonor was totally disabled. His injury prevented him from performing important duties that had occupied approximately two-thirds of his time. For most ordinary, non-compound occupations, being able to perform only one-third of the important duties of the occupation totally precludes one from participating in that occupation. That is of course true also for a compound occupation such as Leonor's; the overall character of Leonor's income-earning activities changed dramatically after his injury. Time spent is not necessarily the only consideration. For some occupations, a few activities that do not take up very much time might be so exceedingly important that they determine an individual's ability to engage in the occupation. But here Leonor's business management activities were not at the core of his

occupation, even if they were a significant source of income. Thus it is reasonable to say that Leonor is unable to perform the important duties of his previous occupation.

That Leonor's business management activities are more lucrative than his dental work ever was does not prevent this conclusion. Prior to his injury, Leonor earned more on a per-hour basis managing his businesses than he earned performing dental procedures. He nonetheless spent the large majority of his time performing dental procedures, which might have been either a subjective preference—he found dentistry more rewarding, for example—or a financial one— performing dental procedures is likely a more stable source of income than owning and managing businesses. Either way, it would make sense for Leonor to insure against becoming unable to perform a broad portion of his income-earning activities; the benefit either replaces the dependable income stream lost or compensates him for the inability to engage in an activity he enjoys. Thus, while income can be relevant to an analysis of total disability, it is far from dispositive. *See Gross v. UnumProvident Life Ins. Co.*, 319 F. Supp. 2d 1129, 1150 (C.D. Cal. 2004). Business management was a side-operation for Leonor prior to his injury even if it was a lucrative one. Even though he could still engage in business management after his injury, the district court properly determined that he was, as a whole, still unable to perform the important duties of his occupation.

The insurers concede that—assuming Leonor prevails on his contract claims—he is entitled to penalty interest under Mich. Comp. Laws § 500.2006(4), notwithstanding the contrary ruling below. The district court interpreted that statute to award penalty interest only if the claim for benefits was not reasonably in dispute, but that is not a requirement for penalty interest for a first-party insured such as Leonor. *See Griswold Props., L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551, 565–66 (2007). Leonor is therefore entitled to 12% penalty interest under Mich. Comp. Laws § 500.2006(4).

As Leonor acknowledges, the fraud claim is an alternative basis for recovery that is operative only if Leonor's contract claim fails. Because we uphold the district court's ruling in Leonor's favor on the contract claims, this aspect of Leonor's cross-appeal need not be addressed.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Leonor on his contract claim, reverse the district court's denial of penalty interest to Leonor under M.C.L. § 500.2006(4), and remand with instructions to modify the award to include penalty interest under that statute.