ESTATE OF CHARLES A. TRAFTON, ETHEL TRAFTON LEVASSEUR, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ETHEL C. TRAFTON LEVASSEUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF CHARLES A. TRAFTON, ETHEL TRAFTON LEVASSEUR, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53576, 55290, 55291. Filed December 26, 1956.

*Carl F. Bauersfeld, Esq.*, for the petitioners.
*Paul J. Henry, Esq.*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in estate and gift taxes as follows:

| Docket No. | Year | Tax | Deficiency |
|---|---|---|---|
| 53576 | | Estate | $9,753.22 |
| 55290 (Ethel) | 1946 | Gift | 1,685.66 |
| 55291 | 1946 | Gift | 11,996.51 |
| 55291 | 1947 | Gift | 304.21 |

Certain adjustments were not contested by the petitioners. They claim an overpayment of estate and gift taxes. There are three issues for decision: (1) Whether Charles made gifts to Ethel in 1946 and 1947, when he transferred securities to and purchased securities in the joint names of himself and Ethel; (2) whether Ethel made a gift to Charles in 1946, when she transferred securities to and purchased securities in the joint names of herself and Charles; and (3) whether the total value of securities which Charles transferred to and purchased in the joint names of himself and Ethel was properly includible in his gross estate for estate tax purposes.

### FINDINGS OF FACT.

Some of the facts are stipulated. These facts are found as stipulated and the exhibits to the stipulation are incorporated herein by this reference.

The petitioner in Docket Nos. 53576 and 55291 is the Estate of Charles A. Trafton, Ethel Trafton Levasseur, Executrix. The petitioner in Docket No. 55290 is Ethel C. Trafton Levasseur, an individual residing in Sanford, Maine. The estate and gift tax returns involved in this proceeding were filed with the collector of internal revenue at Augusta, Maine.

Charles A. Trafton and Ethel C. Trafton were married November 24, 1904. Charles died on December 28, 1949. Ethel subsequently remarried and her name is now Ethel Trafton Levasseur.

At the time of the marriage of Charles and Ethel, Charles and his brother owned and operated a drugstore in Sanford, Maine. The brothers did not agree on the operation of the store and so about 6 months after their marriage Ethel and Charles bought the brother's interest with about $10,000 which Ethel borrowed from her father.

Ethel worked with her husband in the drugstore during the 8 years that they operated it. They paid off the loan and also purchased the block and building in which the drugstore was located and rented stores and rooms. After selling the drugstore they continued renting rooms. They also operated a small loan business and rented mileage books used in railroad travel. Later they operated theatres in Sanford and Springvale, Maine, and at that time had about 40 rooms to rent.

After World War I they sold their various properties and businesses and bought others in another part of Sanford. At the new location they engaged in the businesses of selling wood and coal, hardware, building supplies and materials, and horses. They also acquired and rented tenement houses, stores, and gasoline stations.

In 1925 and 1926 they purchased the stock of the Goodall Worsted Company. They lost a large amount of money during the depression but still maintained and operated most of the businesses until the late 1940's. After the death of Charles and until 1952, Ethel operated the wood and coal business and the building supply business.

From and after their marriage Charles and Ethel had an oral agreement that whatever was earned or accumulated through their joint efforts was to belong to them jointly.

Ethel and Charles had no children. Ethel was an active participant in the operation of the various businesses mentioned above.

Ethel's father died in 1939. The distributive share of his estate which Ethel received was valued at $32,906.13. The distributive share of his estate which Ethel's mother received was valued at $16,453.06. In September 1945 Ethel's mother died intestate, leaving Ethel as her only surviving heir at law. Ethel owned certain securities with her mother jointly, which she received on her mother's death.

Charles made the following transfers of securities directly from his name to the joint names of "Charles A. Trafton and Ethel C. Trafton, as joint tenants with the right of survivorship and not as tenants in common." It is stipulated that these transfers created a tenancy in common under Maine law.

| Calendar year | Value at date of transfer | Value at date of death |
|---|---|---|
| 1943 | $16,250.00 | $8,000.00 |
| 1944 | 80,260.00 | 52,918.75 |
| 1946 | 136,882.51 | 125,756.26 |
| 1947 | 19,275.00 | 14,883.75 |
| Total | $252,667.51 | $201,558.76 |

The securities listed above as having been transferred in 1946 were transferred between September 27 and November 2 of that year.

The following purchases of securities were made in the joint names of Charles A. Trafton and Ethel C. Trafton, his wife, with Charles's name appearing first. It is stipulated that these purchases created a joint tenancy under Maine law.

| Calendar year | Value at date of purchase | Value at date of death |
|---|---|---|
| 1944 | $109,049.00 | $117,456.00 |
| 1946 | 4,337.50 | 2,825.00 |
| 1947 | 30,835.50 | 23,057.25 |
| 1948 | 36,110.01 | 27,195.07 |
| 1949 | 12,251.13 | 12,774.56 |
| Total | $192,583.14 | $183,307.88 |

The following purchases of securities were made in the joint names of Ethel C. Trafton and Charles A. Trafton, her husband, by Ethel, with Ethel's name appearing first. It is stipulated that these purchases created a joint tenancy under Maine law.

| Calendar year | Value at date of purchase | Value at date of death |
|---|---|---|
| 1946 | $5,910.94 | $4,566.25 |
| 1947 | 5,285.31 | 5,032.50 |
| 1948 | 4,302.50 | 4,445.63 |
| 1949 | 3,521.88 | 3,890.63 |
| Total | $19,020.63 | $17,935.01 |

On December 2, 1946, Ethel transferred securities, as follows, directly from her name to the joint names of "Ethel C. Trafton and Charles A. Trafton, as joint tenants with right of survivorship and not as tenants in common." It is stipulated that this transfer created a tenancy in common under Maine law.

| Calendar year | Value at date of transfer | Value at date of death |
|---|---|---|
| 1946 | $109,339.69 | $104,260.34 |

The bulk of these securities was traceable to securities inherited by Ethel from her father and mother or securities owned jointly by Ethel and her mother, which Ethel received at the death of her mother in 1945, and purchases made with Ethel's separate funds.

The reason Charles's name appeared first on some of the securities held jointly, and Ethel's name appeared first on the others, was so that they could determine which of them had originally transferred to or purchased the securities in their joint names.

On July 22, 1953, the Estate of Charles A. Trafton filed gift tax returns for Charles A. Trafton, deceased, which showed the following:

| Year | Value of gifts | Exclusion | Specific exemption | Marital deduction | Gift tax paid |
|------|------|------|------|------|------|
| 1943 | $8,125.00 | $3,000 | $5,125 | | |
| 1944 | 94,654.50 | 3,000 | 24,875 | | $8,548.70 |
| 1946 | 15,940.16 | 3,000 | | | 2,717.43 |
| 1947 | 25,055.25 | 3,000 | | | 4,658.22 |
| 1948 | 18,055.00 | 3,000 | | $8,153.28 | 1,552.89 |
| 1949 | 6,125.57 | 3,000 | | 3,062.78 | 14.12 |

Ethel filed a gift tax return for the year 1946 which reported that she received an adequate and full consideration for the securities which she transferred to herself and Charles jointly that year.

On April 19, 1954, Charles's estate filed a claim for refund of gift taxes paid in the year 1944, on the ground that Charles made no taxable gifts that year.

On that date, Charles's estate also filed claims for refund of gift taxes paid for the years 1946, 1947, 1948, and 1949, on the ground that there were no gifts in 1943 and 1944 and hence there was a lesser amount of resulting tax in these later years.

The estate tax return was filed on March 29, 1951. It included in the gross estate for estate tax purposes the total value of those securities which Charles had purchased in joint tenancy and the total value of those securities which he had transferred into joint tenancy, but which resulted in a tenancy in common. It did not include the value of those securities purchased in joint tenancy by Ethel, nor did it include the value of those securities transferred by Ethel into joint tenancy, but which resulted in a tenancy in common.

On December 24, 1953, Charles's estate filed a claim for refund of estate taxes paid, on the ground that one-half of the value of securities held by Charles and Ethel as joint tenants and as tenants in common had erroneously been included in Charles's gross estate.

### ULTIMATE FINDINGS AND CONCLUSIONS.

Ethel contributed an adequate and full consideration in money or money's worth toward the securities which Charles transferred to and purchased in their joint names during the years 1946 and 1947.

Charles did not make gifts to Ethel when he transferred securities to and purchased securities in their joint names during the years 1946 and 1947.

Charles did not contribute an adequate and full consideration in money or money's worth for the securities which Ethel transferred to and purchased in the joint names of herself and Charles during the year 1946.

Charles did not retain any rights in, or income from, the securities which he transferred to or purchased in the joint names of himself and Ethel during the years 1946 and 1947, except as a joint tenant or tenant in common.

OPINION.

### Gift Tax Issues.

On these issues petitioners contend that no gifts were made, by either Charles or Ethel, in the years in question when they transferred securities to or purchased securities in their joint names. Their argument is that the purchases and transfers were made pursuant to the mutual agreement of the parties set out in our Findings of Fact which was supported by "an adequate and full consideration in money or money's worth."

Except as hereafter noted with respect to Ethel's purchases and transfers in 1946, we agree with petitioners. Certainly the type of agreement between husband and wife with which we are concerned is not novel. See *Richardson* v. *Helvering*, 80 F. 2d 548 (C. A., D. C. 1935) ; *Rogan* v. *Kammerdiner*, 140 F. 2d 569 (C. A. 9, 1944) ; *Berkowitz* v. *Commissioner*, 108 F. 2d 319 (C. A. 3, 1939) ; and *Estate of Lester L. Fletcher*, 44 B. T. A. 429 (1941). The principal difficulty in cases involving oral agreements of this kind is establishing the existence of the agreement and its terms by adequate proof. In this instance we are satisfied with the proof and have found as a fact that Charles and Ethel orally agreed at the outset of their marriage that whatever was earned or accumulated by them as a result of their joint efforts was to belong to them jointly. It is apparent that this arrangement was not a passive one with Ethel. She assisted Charles at the beginning by borrowing $10,000 from her father in order to buy the other one-half of the drugstore. And from that time on, until the death of Charles, about 45 years later, she actively participated in the various enterprises described in our Findings of Fact. There was nothing formal about the arrangement. But that is often the case with husband and wife agreements and it does not destroy their binding effect.

The purchases and transfers of securities by Charles and Ethel in and to their joint names in the taxable years were simply a belated attempt to put order into their affairs and carry out their long-standing agreement. The fact that gift tax returns were mistakenly filed is not controlling as to whether or not gifts were made. *Estate of Lester L. Fletcher, supra.*

With reference to the securities transferred to and purchased in the joint names of Charles and Ethel, no matter whose name appears first, we hold that full and adequate consideration in money or money's

worth was furnished and that no taxable gifts were made, with this exception. In 1946 Charles transferred to their joint names, securities valued at some $136,000, and Ethel transferred to and purchased in their joint names some $115,000 ($109,000 by transfer, $6,000 by purchase) worth of securities. These securities, for all that appears of record, had theretofore stood in the separate names of each. There is nothing to show that the securities standing in Charles's name were not subject to the agreement outlined above and under that agreement, Ethel had a joint interest therein. The transfers of such securities therefore resulted in no gifts. With respect to the securities which Ethel transferred and purchased, however, it appears that the great bulk came to her from her parents or from her separate funds. Not having been acquired through the mutual efforts of the parties, they were not subject to the agreement. Nor can we find that Charles furnished any consideration for his wife's transfer of these properties to their joint names. The Commissioner determined that as a result of this transfer, Ethel made a gift of one-half the value of the securities to Charles. Petitioners have failed to prove error in this determination and the Commissioner's action is approved.

### Estate Tax Issues.

An estate tax return was filed by the estate of the decedent, Charles. It included in the gross estate the full value at the date of death ($201,558.76) of those securities which Charles had transferred to himself and Ethel as joint tenants which resulted in a tenancy in common during the years 1943, 1944, 1946, and 1947. It also included in the gross estate the full value at the date of death ($183,307.88) of those securities which Charles purchased in the joint names of himself and Ethel in the years 1944, 1946, 1947, 1948, and 1949. It did not include the value at the date of death ($17,953.01) of those securities which Ethel purchased in their joint names during the years 1946 through 1949. Nor did it include the value at the date of death ($104,260.34) of those securities transferred to their joint names by Ethel in 1946 which resulted in a tenancy in common. However, as to the latter securities, the Commissioner determined that $33,786.61 should be included in Charles's gross estate. This was one-half of their value at the date of Charles's death less a life estate in Ethel.[1] The petitioners concede the propriety of this adjustment. However, they contend that one-half of the value of the securities Charles transferred to and purchased in the joint names of himself and Ethel was erroneously included in Charles's gross estate and that adjustment should be made therefor under Rule 50. We agree with the petitioners.

---

[1] There is no explanation why the Commissioner reduced the one-half value of the securities held as tenants in common by the value of a life estate in Ethel.

We have found as stipulated that the transfer of securities by Charles to their joint names did not result in a joint tenancy, but resulted in a tenancy in common. Thus Charles and Ethel each owned an undivided one-half of those securities and only the value of Charles's one-half interest is includible in his gross estate. The value of Ethel's one-half interest is not includible in Charles's gross estate under section 811 (e) of the Internal Revenue Code of 1939, since that section applies only to joint interests and has no application to property held under a tenancy in common. *Harvey* v. *United States*, 185 F. 2d 463 (C. A. 7, 1950). However, the Commissioner argues that Ethel's one-half interest in the securities is includible in Charles's gross estate under section 811 (c) (1) (B), for the reason that Charles retained for his life the possession or enjoyment of, or the income from, the securities. To support his position the Commissioner relies upon testimony that a conversation between Ethel and a revenue agent took place in which she said that she "wouldn't dare to use any of the income" from the securities Charles transferred to or purchased in their joint names in which his name appeared first. The Commissioner's reliance is misplaced. That Charles received the entire income from the securities and used it as he pleased has no significance. One-half of that income was Ethel's just as much as if she had received it in the first instance and paid it over to Charles. His possession and enjoyment of Ethel's one-half interest in the securities was wholly dependent upon her consent; at any time subsequent to the date of transfer of the securities she could have partitioned them and deprived Charles of their possession and use. Charles did not retain any rights in, or income from, the interest which Ethel owned as a tenant in common in the securities and therefore section 811 (c) (1) (B) has no application. See *Frank G. Williams et al., Executors*, 25 B. T. A. 1078 (1932), and *George W. Dulany, Jr., et al.*, 17 B. T. A. 486 (1929).

The purchase of securities by Charles in the joint names of himself and Ethel during the years 1944, 1946, 1947, 1948, and 1949 resulted in joint tenancies. The value of those securities is includible in Charles's gross estate in full under section 811 (e), except that part which may be shown to have originally belonged to Ethel and which was never received or acquired by her from Charles for less than an adequate and full consideration in money or money's worth. Ethel has shown that the purchases were made to effectuate the oral agreement between herself and Charles that whatever was earned or accumulated by them as a result of their joint efforts belonged to them equally. Our decision on the gift tax issues, *supra*, was that Ethel contributed an adequate and full consideration in money or money's worth toward the securities purchased by Charles in their joint names.

Thus, Ethel has shown that her one-half interest in the securities originally belonged to her and was never acquired by her from Charles for less than an adequate and full consideration in money or money's worth. It follows that only one-half of the value of the securities held by Charles and Ethel as joint tenants is properly includible in Charles's gross estate under section 811 (e). And the value of Ethel's one-half interest in these securities is not includible in Charles's gross estate under section 811 (c) (1) (B), since Charles did not retain any rights in, or income from, this interest. When Charles purchased the securities in their joint names he made a clear surrender of one-half of the securities and the income therefrom. *Frank G. Williams, supra,* and *George W. Dulany, Jr., supra.*

*Decisions will be entered under Rule 50.*