RICHARD V. MADDEN AND MARGARET J. MADDEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4407–66, 4572–66.   Filed August 21, 1969.

*John F. Kelly,* for the petitioners.
*James F. Kennedy* and *Seymour I. Sherman,* for the respondent.

### OPINION

SIMPSON, *Judge:* The respondent determined deficiencies in the petitioners' income taxes as follows:

| Taxable year | Deficiency |
|---|---|
| 1963 | $21,191.38 |
| 1964 | 2,336.69 |

The issue remaining for decision is the correct basis of certain stock sold by the petitioner, Richard V. Madden. The stock was owned in joint tenancy by the petitioner and his former wife at the time of her death. The petitioner filed a Federal estate tax return for his wife's estate and included in gross estate one-half of the value of the stock. Relying on section 1014(a) and (b) (9) of the Internal Revenue Code of 1954,[1] the petitioners contend that the basis in the stock should be

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

increased by the amount of the inclusion in gross estate. The respondent contends that the basis of the stock should be its cost, since the petitioners have not shown that any part of the value of the stock was required to be included in gross estate.

All the facts have been stipulated, and those facts are so found.

The petitioners, Richard V. Madden and Margaret J. Madden, are husband and wife, who resided in Evanston, Ill., at the time the petitions were filed in these cases. Their joint Federal income tax returns for the taxable years 1963 and 1964 were filed with the district director of internal revenue at Chicago, Ill. Mr. Madden will be referred to as the petitioner.

At the time of the death of the petitioner's first wife, Anita H. Madden, on December 13, 1961, she and the petitioner held as joint tenants 5,550 shares of the common stock of Chicago Musical Instrument Co. Their ownership of such stock, hereinafter referred to as the stock, resulted from several transactions that occurred between 1950 and 1960 as set forth below:

ACQUISITIONS

| Year | Method | Cost | Number of shares |
|------|--------|------|------------------|
| 1950 | Purchase | $5,000 | 1,000 |
| 1952 | Purchase | 6,000 | 1,000 |
| 1954 | Purchase | 6,500 | 1,000 |
| 1960 | 150% stock dividend | 0 | 4,500 |
| 1960 | Purchase | 7,519 | 300 |
| | Total acquisitions | | 7,800 |

DISPOSITIONS

| Year | Method | Number of shares |
|------|--------|------------------|
| 1960 | Gift | 100 |
| 1960 | Sale | 2,150 |
| | Total dispositions | 2,250 |
| | Total shares held in joint tenancy as of 12/13/61 | 5,550 |

As a result of a 2-for-1 stock split in May 1962, the petitioner acquired an additional 5,550 shares of stock in respect of the stock formerly held in joint tenancy.

On March 12, 1963, the petitioner timely filed a Federal estate tax return on behalf of the Estate of Anita H. Madden and paid a Federal estate tax of $2,099.31. In accordance with section 2032, the estate elected the alternate valuation date of December 13, 1962, at which time each of the 11,100 shares of stock had a fair market value of $27.50. In computing its tax, the estate included in gross estate one-half the total value of the stock.[2]

On February 9, 1966, the district director with whom the Federal estate tax return was filed, sent the estate a notice of overassessment of

[2] The record reveals that approximately one-third of the stock is traceable to stock originally held by the petitioner in his individual name, but the record does not establish the reason for the inclusion of one-half of the stock in gross estate.

estate tax on the ground that no portion of the value of the stock was includable in gross estate. As a result of such notice, on March 1, 1966, the estate filed a claim for refund of estate tax.

In two 1963 transactions, the petitioner sold 3,500 shares of the stock for sales prices totaling $87,413. Using a basis of $27.50 for each share sold, the petitioners reported a 1963 capital loss of $8,837. A portion of this loss which was not deductible by the petitioners in 1963 was carried over by them and deducted in 1964. The respondent disallowed the capital losses claimed by the petitioners in their 1963 and 1964 income tax returns and determined that they failed to recognize a capital gain of $80,413 in 1963. In arriving at these determinations, the respondent found that the petitioner's basis in the stock he sold was $2 per share. The petitioners now agree that the basis for each share of stock does not exceed $14.75, comprised of $13.75, one-half of the value of the stock on the valuation date, and $1, one-half of the alleged cost of the stock.

In this case, we must determine how section 1014 is to be applied to property acquired by a surviving joint tenant. Section 1014(a) provides that the basis of property acquired from a decedent shall be its fair market value as of the date when the property is valued for Federal estate tax purposes. Section 1014(b)(9) defines property acquired from a decedent as including property acquired:

by reason of death, form of ownership, or other conditions * * * if by reason thereof the property is required to be included in determining the value of the decedent's gross estate under * * * [the Federal estate tax] * * *

Property acquired as a result of a joint tenant's right of survivorship constitutes property acquired "by reason of death, form of ownership, or other conditions." Sec. 1.1014–2(b)(2), Income Tax Regs.

With respect to the question of whether "the property is required to be included in * * * gross estate," section 2040 provides:

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, * * * except such part thereof as may be shown to have originally belonged to such other person * * *

Jointly held property is treated as originally belonging to a joint tenant to the extent such tenant supplied consideration used to purchase such property. See sec. 20.2040–1(a)(2), Estate Tax Regs.; *Estate of Charles A. Trafton*, 27 T.C. 610, 617 (1956).

Neither the petitioners nor the respondent have introduced any evidence or made any stipulation of fact as to whether any of the stock originally belonged to the petitioner's former wife or as to whether she furnished any consideration for its purchase. The respondent argues that the petitioners have the burden of proving that the value of the stock, or some portion thereof, was required to be included in

the Estate of Anita H. Madden, and that since there is no evidence that any portion of the value of the stock was properly includable in her estate, the petitioners have failed to meet their burden of proof under section 1014(a). See Rules 31(g) and 32, Tax Court Rules of Practice; *Welch* v. *Helvering*, 290 U.S. 111 (1933); *Emanuel Cohen*, 20 B.T.A. 647 (1930).

The petitioners freely concede that they have the burden of proving that the stock was required to be included in Anita H. Madden's gross estate. However, they strenuously urge that in order to prove this fact they need not show that any of the stock originally belonged to Anita H. Madden. Rather, they contend that under section 2040, the entire value of the stock is required to be included in gross estate unless it is shown that it originally belonged to the petitioner, and that since such a showing has not been made, at least one-half of the value of the stock was required to be included in her gross estate.

In their briefs, the parties devote a good deal of time to arguing whether the petitioner was engaged in a "scheme" to reduce his taxes or whether he was merely exercising his privilege of paying the minimum tax required by law. We need not pass upon his motives. The issue, as we see it, is rather what is meant by the word "required" in section 1014(b)(9).

According to the petitioners' view, we should look at the events that have occurred, and based upon those events, at least one-half of the value of the stock was required to be included in the estate of the deceased joint tenant. The effect of this contention is that the petitioner had an option—he could have included the entire value of the stock in the gross estate of the deceased joint tenant without attempting to show that any part of the consideration for its purchase was furnished by anyone else, or, to the extent he possessed such proof, he could have made a showing that the stock was owned by him or purchased with consideration supplied by him. The petitioner does recognize that his option is not irrevocable; he recognizes that the respondent has the privilege of showing that a portion of the value of the stock was not required to be included in the gross estate of the deceased joint tenant, but according to the petitioners' position, the respondent, if he wishes to exercise that privilege, has the burden of making such a showing. We are not convinced that when the term "required" was used in section 1014(b)(9), it was intended to give a surviving joint tenant such an option or to shift the burden of proof in the suggested manner.

The predecessor of section 2040 was section 202(c) of the Revenue Act of 1916 which provided that gross estate included property:

(c) To the extent of the interest therein held jointly * * * by the decedent and any other person, * * * except such part thereof as may be shown to have originally belonged to such other person * * *

Thus, since 1916, jointly owned property has been totally includable in the gross estate of a deceased joint tenant, except to the extent of any part thereof shown to have originally belonged to another. However, with a limited exception,[3] before 1954, there was no "step-up" in the basis of joint property as a result of its inclusion in gross estate. *Lang* v. *Commissioner*, 289 U.S. 109 (1933). It is clear that when the rules of section 2040 were adopted, their only effect was on the amount of the estate tax to be paid. By requiring that the entire value of the jointly owned property be included in gross estate, these rules had the effect of imposing upon the executor, or other person who had an interest in reducing the estate tax, the burden of showing that not all of the jointly owned property was subject to taxation. Obviously, it is frequently difficult to trace the source of funds used to purchase jointly owned property, and the burden was thus placed upon the person who had an interest in establishing such facts and to whom the information would be more readily available than to the respondent. Such was the situation when section 1014(b) (9) was enacted in 1954.

As a result of the enactment of section 1014(b) (9), providing a "step-up" in basis for jointly owned property included in an estate, it may now be to the advantage of some surviving joint tenants not to seek a reduction of the estate tax by establishing that part or all of the jointly owned property originally belonged to the survivor. However, we cannot believe that Congress contemplated that the term "required" should be construed so as to give survivors an option to decrease income tax by increasing estate tax, or to shift to the respondent, in income tax controversies, the burden of proving that less property was required to be included in gross estate than was actually included. There is no indication that Congress contemplated that it was conferring upon a surviving joint tenant the privilege of paying more estate tax than was necessary so as to reduce his income tax liability on the subsequent sale of the property. It seems more likely that when the term "required" was used, it was assumed that the executor or other interested person would attempt to secure the maximum exclusion of the jointly owned property from the estate; only to the extent that the executor was unable to show that the property was not excludable was it required to be included in gross estate. Such an interpretation of "required" is consistent with the practice that existed in 1954 and has the effect of imposing the burden upon the person who has the information most readily available.

We are not concerned with a situation in which there has been a final determination of the amount includable in gross estate; the estate tax return involved herein was not accepted by the respondent. See sec. 1.1014–3(a), Income Tax Regs. The petitioner has made no attempt,

---

[3] See sec. 1014(b) (8).

either in the estate tax return or in this proceeding, to show that any portion of the stock was excludable from the estate of his deceased wife. In these circumstances, we hold that the petitioner has failed to prove that one-half of the value of the stock was required to be included in the estate of his deceased wife and that he is entitled to a "step-up" in the basis of the stock by reason of such an inclusion.

In order to reflect the agreement of the parties as to other items in the notices of deficiency,

*Decisions will be entered under Rule 50.*