110 T.C. No. 14


UNITED STATES TAX COURT


THERESE HAHN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17210-96.                    Filed March 4, 1998.


        P and her husband (H) purchased property in 1972
as joint tenants with right of survivorship.  P became
the sole owner of the property upon H's death in 1991.
H's Federal Estate Tax Return reported 100 percent of
the date of death value of the property as H's interest
therein.  P sold the property in 1993 and, pursuant to
secs. 2040(a) and 1014(b)(9), I.R.C., included 100
percent of the date of death value of the property in
calculating her basis.  R determined that, because H
died after Dec. 31, 1981, pursuant to sec. 2040(b)(1),
I.R.C., only 50 percent of the date of death value of
the property was required to be included in H's gross
estate and, pursuant to sec. 1014(b)(9), I.R.C., P
should receive a step-up in basis for only 50 percent
of the value of the property.
        Held:  Amendment to definition of "qualified joint
interest" in sec. 2040(b)(2), I.R.C., did not expressly
or impliedly repeal effective date of 50-percent
inclusion rule of sec. 2040(b)(1), I.R.C., which

-2-

therefore does not apply to spousal joint interests created before Jan. 1, 1977.


K. Bruce Friedman, for petitioner.

Laurel M. Robinson, for respondent.


OPINION

COHEN, Chief Judge:  This case was assigned to Special Trial Judge John F. Dean pursuant to section 7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

DEAN, Special Trial Judge:  This case is before us on petitioner's motion for summary judgment and respondent's cross-motion for partial summary judgment.  Respondent determined a deficiency in petitioner's 1993 Federal income tax in the amount of $50,123 and an accuracy-related penalty under section 6662(a) in the amount of $10,025.

The issue for decision concerns petitioner's basis in property which had been held by petitioner and her now-deceased husband in joint tenancy with right of survivorship.  To resolve this issue, we must decide whether the 1981 amendment of the definition of "qualified joint interest" in section 2040(b)(2)

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code and all Rule references are to the Tax Court Rules of Practice and Procedure.

expressly or impliedly repealed the effective date of section 2040(b)(1). Petitioner resided in Oakland, California, at the time she filed her petition.

A motion for summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of showing that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Preece v. Commissioner, 95 T.C. 594, 597 (1990).

The opposing party cannot rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Rule 121(d). The existence of any reasonable doubt as to the facts will result in denial of the motion for summary judgment. Hoeme v. Commissioner, 63 T.C. 18, 20 (1974). We set forth a summary of facts relevant to our discussion that do not appear to be in dispute; the facts are stated solely for purposes of deciding the motions and are not findings of fact for this case. See Fed. R. Civ. P. 52(a); Sundstrand Corp. v. Commissioner, supra at 520.

Background

On June 8, 1972, John P. Hahn, petitioner's husband, signed a subscription agreement to purchase shares in Fifty CPW Tenants Corporation (CPW) for a purchase price of $44,000. On February 15, 1973, 440 shares of CPW were issued to petitioner and her husband as joint tenants with right of survivorship. These shares were allocated to apartment 10C, located at 50 Central Park West, New York, New York.

On August 19, 1991, Mr. Hahn died, and petitioner became the sole owner of the CPW shares. On July 8, 1993, the estate of John P. Hahn filed a Federal Estate Tax Return reporting 100 percent of the value of the CPW shares on the date of Mr. Hahn's death as the value of his interest in the shares. The value of the shares on the date of Mr. Hahn's death was reported at $700,000.

Petitioner sold the CPW shares on September 28, 1993. On a Form 2119 (Sale of Your Home) attached to her 1993 Federal income tax return, petitioner reported a selling price for the CPW shares of $720,000 and a basis of $758,412.[2] Accordingly, petitioner reported no gain on the sale.

In a notice of deficiency issued June 17, 1996, respondent determined, inter alia, that, pursuant to section 2040(b)(1),

---

[2]On a statement attached to her return, petitioner calculated her basis as follows: $700,000 date of death value, $572 of transfer fees, $43,200 of commissions, $13,140 of transfer taxes, and $1,500 for asbestos removal.

petitioner could receive a stepped-up basis for only 50 percent of the date of death value of the CPW shares.  Accordingly, respondent determined that petitioner had a basis in the CPW shares of $428,340, composed of the following amounts:  One-half of the original cost basis ($22,000), one-half of the date of death value ($350,000), $43,200 of commissions, and $13,140 of transfer taxes.[3]  From the $720,000 selling price, respondent subtracted the $428,340 basis and allowed the section 121 one-time exclusion of $125,000 of gain from the sale of a principal residence to determine a gain on sale of $166,660.

Discussion

Petitioner argues that because the joint tenancy was created prior to January 1, 1977, and because she provided no part of the consideration for the purchase, the contribution rule of section 2040(a) is applicable and, consequently, under section 1014, she is entitled to a stepped-up basis in 100 percent of the property. Respondent argues that because petitioner's husband died after 1981, as a matter of law the 50-percent inclusion rule of section 2040(b)(1) is applicable and that petitioner is entitled to a stepped-up basis under section 1014 in only 50 percent of the property.  Alternatively, respondent argues that if the contribution rule of section 2040(a) is applicable, petitioner

---

[3]Respondent did not include the $572 of transfer fees and $1,500 for asbestos removal in petitioner's basis.

has not proven that her husband provided all of the consideration used to purchase the property.

The only evidence petitioner has submitted concerning the original consideration used to purchase the CPW shares is her sworn affidavit that her husband provided the entire consideration. Petitioner also notes that she and her husband resided in New York, a noncommunity property State, at the time of purchase. Assuming arguendo that the contribution rule of section 2040(a) is applicable, we are still left with the unresolved factual dispute as to the source of the consideration used to purchase the shares. We do not resolve disagreements over relevant factual issues in a summary judgment proceeding, and, consequently, petitioner's motion for summary judgment is denied. See Espinoza v. Commissioner, 78 T.C. 412, 416 (1982); Hoeme v. Commissioner, supra at 20.

Respondent's motion, however, does not implicate any factual issues. Respondent argues that, pursuant to section 2040(b), petitioner is entitled to a stepped-up basis in only 50 percent of the CPW shares, regardless of whether petitioner or her husband furnished the consideration for the purchase. Accordingly, a decision on respondent's motion may be rendered as a matter of law.

Section 1001 governs the determination of gains and losses on the disposition of property. Commissioner v. Tufts, 461 U.S. 300, 304 (1983). Generally, gain or loss from the disposition of

property is measured by the amount realized less the adjusted basis of the property. Sec. 1001(a).[4] Section 1014 generally provides that the basis of property acquired from a decedent is the fair market value of the property at the date of the decedent's death or on the alternate valuation date. Sec. 1014(a). A surviving joint tenant, however, is considered to have acquired property from the decedent only to the extent that the property was required to be included in the estate of the deceased joint tenant. Sec. 1014(b)(9). Correspondingly, the portion of the property not included in the decedent's estate retains the survivor's adjusted basis. Thus, determination of petitioner's basis in the CPW shares hinges on the portion of the property required to be included in her husband's estate.

Section 2040 governs the value of jointly-owned property to be included in a decedent's estate. Before 1977, section 2040[5]

---

[4]Losses attributable to the sale of a family residence, however, are nondeductible personal losses. Sec. 262; Austin v. Commissioner, 35 T.C. 221 (1960), affd. 298 F.2d 583 (2d Cir. 1962); Doerries v. Commissioner, T.C. Memo. 1991-396; sec. 1.262-1(b)(4), Income Tax Regs.

[5]Sec. 2040 of the Internal Revenue Code of 1954 provided:

SEC. 2040. JOINT INTERESTS.
    The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part
(continued...)

provided that the gross estate includes the value of all property held at the time of a decedent's death by the decedent and another person in a joint tenancy or tenancy by the entirety, except such part of the entire value that is attributable to the amount of consideration in money or money's worth furnished by such other person.  Thus, the rule established a "contribution test", whereby the estate of the deceased joint tenant must generally include the value of the entire property less the portion of the property attributable to the consideration furnished by the surviving joint tenant.  The statute creates a rebuttable presumption that the value of the entire property is includable in the deceased joint tenant's estate, and the burden

---

[5](...continued)
thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth:  Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person:  Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.

of showing original ownership or contribution to the purchase price by the surviving joint tenant falls upon the estate. <u>Estate of Heidt v. Commissioner</u>, 8 T.C. 969 (1947), affd. per curiam 170 F.2d 1021 (9th Cir. 1948); <u>Estate of Balazs v. Commissioner</u>, T.C. Memo. 1981-423, affd. without published opinion 693 F.2d 134 (11th Cir. 1982).

In 1976, subsection (b) of section 2040 was added to the Code by section 2002(c)(1) of the Tax Reform Act of 1976 (TRA 76), Pub. L. 94-455, 90 Stat. 1520, 1855.[6]  The 1976 amendment created a special rule where the joint tenants were husband and wife.  If the interest was a "qualified joint interest",[7] only one-half of the value of the property owned in joint tenancy was includable in the decedent's gross estate, without regard to

---

[6]As enacted in 1976 sec. 2040(b) read:

> (b)  Certain Joint Interests of Husband and Wife.--
>      (1)  Interests of spouse excluded from gross estate.-- Notwithstanding subsection (a), in the case of any qualified joint interest, the value included in the gross estate with respect to such interest by reason of this section is one-half of the value of such qualified joint interest.
>      (2)  Qualified joint interest defined.--For purposes of paragraph (1), the term "qualified joint interest" means any interest in property held by the decedent and the decedent's spouse as joint tenants or as tenants by the entirety, but only if--
>           (A)  such joint interest was created by the decedent, the decedent's spouse, or both,
>           (B)(i) in the case of personal property, the creation of such joint interest constituted in whole or in part a gift for purposes of chapter 12, or
>                (ii) in the case of real property, an election under section 2515 applies with respect to the creation of such joint interest, and
>           (C) in the case of a joint tenancy, only the decedent and the decedent's spouse are joint tenants.

[7]A "qualified joint interest" was defined as a joint tenancy between husband and wife, or a tenancy by the entirety, where (1) such interest was created by the decedent, the decedent's spouse, or both, and (2) the creation of the joint interest must have been a gift subject to Federal gift tax.

which spouse furnished the consideration to acquire the jointly held property.[8]  TRA 76 sec. 2002(d)(3), 90 Stat. 1856, provided an effective date for the new 50-percent inclusion rule of section 2040(b), making it applicable to "joint interests created after December 31, 1976."[9]

Congress amended section 2040 again in 1978, with the addition of subsections (c), (d), and (e).  Revenue Act of 1978, Pub. L. 95-600, secs. 511(a) and 702(k)(2), 92 Stat. 2763, 2881, 2932.  Essentially, these subsections provided a mechanism whereby an election could be made to treat joint interests created prior to 1977 as "qualified joint interests" subject to the 50-percent inclusion rule of section 2040(b).[10]

---

[8]By way of a "clerical amendment", sec. 2002(c)(3) of the Tax Reform Act of 1976 (TRA 76), Pub. L. 94-455, 90 Stat. 1520, 1856, redesignated the original sec. 2040 as new subsection 2040(a), making it the general inclusion rule for all joint interests other than "qualified joint interests".

[9]Although the effective date was not codified in the U.S. Code, it was enacted as a section of the public law that was subsequently codified at sec. 2040 and, accordingly, has the force of law.  See Patten v. United States, 116 F.3d 1029, 1033 n.3 (4th Cir. 1997).

[10]Sec. 2040(c) provided for an election to exclude a portion of the value of jointly owned property used for farming or any other trade or business based on the material participation of the decedent's spouse in the activity.  Sec. 2040(d) provided an election to treat joint interests created before 1977 as "qualified joint interests".  Instead of severing and re-creating the pre-1977 joint interest, a husband and wife could file a gift tax return reporting a "deemed" gift (resulting from a "deemed" severance and re-creation of the joint interest).  Finally, sec. 2040(e) provided that if a pre-1977 joint interest was actually severed and re-created by deed, it would nonetheless not be

(continued...)

The final relevant amendment to section 2040 took place in 1981. Subsections (c), (d), and (e), which had been adopted in 1978, were repealed. Economic Recovery Tax Act of 1981 (ERTA), sec. 403(c)(3), Pub. L. 97-34, 95 Stat. 172, 302. The definition of a "qualified joint interest" in section 2040(b)(2) was redefined to eliminate the requirement that the creation (or re-creation) of the joint interest be treated as a gift.[11] ERTA sec. 403(c)(1), 95 Stat. 301-302. However, the operational provision of section 2040(b)(1), providing for 50 percent inclusion, was not changed. The effective date provision of the 1981 amendment made these changes applicable "to the estates of decedents dying after December 31, 1981." ERTA sec. 403(e)(1), 95 Stat. 305.

The issue we face, then, is whether section 2040(b)(1) applies to joint interests created before January 1, 1977, where the deceased joint tenant died after December 31, 1981.

---

[10](...continued)
treated as a "qualified joint interest" unless an election under subsection (d) was made.

[11]As enacted in 1981, sec. 2040(b)(2) provided:

> (2) Qualified joint interest defined.--For purposes of paragraph (1), the term "qualified joint interest" means any interest in property held by the decedent and the decedent's spouse as--
>     (A) tenants by the entirety, or
>     (B) joint tenants with right of survivorship, but only if the decedent and the spouse of the decedent are the only joint tenants.

Before 1977, section 2040 merely provided for a contribution rule to determine inclusion in the gross estate of a joint tenant. The 1976 amendment provided in section 2040(b)(1) for a 50-percent inclusion rule for "qualified joint interests" (as defined in section 2040(b)(2)), with the new rule being applicable to "joint interests created after December 31, 1976." Joint interests created before January 1, 1977, were still subject to the contribution rule of section 2040(a). In 1981, the definition of a "qualified joint interest" contained in section 2040(b)(2) was changed, effective for "the estates of decedents dying after December 31, 1981." The effective date of the operational provision of section 2040(b)(1), however, was not changed. The question is whether the 1981 amendment to the definition of "qualified joint interests" in section 2040(b)(2) somehow modified the effective date provision of section 2040(b)(1).

This issue was addressed in Gallenstein v. United States, 975 F.2d 286 (6th Cir. 1992). That case involved the same relevant facts and the identical legal issue, namely, the income tax basis of property held in joint tenancy with right of survivorship upon the death of the taxpayer's spouse. In 1955, Mrs. Gallenstein and her husband purchased real property as joint tenants with right of survivorship. The entire purchase price derived from Mr. Gallenstein's earnings. Upon her husband's death in 1987, Mrs. Gallenstein became the sole owner of the

- 14 -

property.  Approximately 7 months later, she then sold the property, which had appreciated substantially since its purchase in 1955.  Eventually, on a second amended Federal income tax return for 1988, Mrs. Gallenstein reported 100 percent of the date of death value of the property as her basis, resulting in no capital gain upon its sale.

In opposing her refund suit, the Government argued, as here, that, pursuant to section 2040(b)(1), Mrs. Gallenstein could receive a stepped-up basis for only 50 percent of the property. The Government asserted that the 1981 amendment of the definition of "qualified joint interests" in section 2040(b)(2) operated to repeal the effective date of section 2040(b)(1), and therefore the 50-percent inclusion rule was applicable to Mr. Gallenstein's estate because he died after December 31, 1981.  The Government pursued this claim along both an express and an implied repeal theory.

The Court of Appeals for the Sixth Circuit concluded that the 1981 amendment to paragraph (2) of section 2040(b) did not act to repeal the effective date of the 1976 amendment creating "qualified joint interests", and therefore affirmed summary judgment in favor of Mrs. Gallenstein.  The court rejected the Government's claim that section 2040(b)(2) expressly repealed the effective date of section 2040(b)(1) by changing the definition of "qualified joint interests."  The court reasoned that an express repeal can only be found where a subsequent statute

expressly states that it repeals a portion of the former statute. The express repeal of subsections (c), (d), and (e) of section 2040 by the 1981 amendment was deemed persuasive evidence that Congress did not also intend to repeal subsection (b)(1).

Next, the Court of Appeals concluded that there had been no implied repeal of the effective date of section 2040(b)(1). It reasoned that, lacking any evidence showing an affirmative intention to repeal, an implied repeal can only be found where two acts are in irreconcilable conflict or where a subsequent act covers the whole subject of an earlier act. In the court's view, the two acts here peacefully coexist, as section 2040(b)(1) applies to a "qualified joint interest" created after 1976, while section 2040(b)(2) merely redefines a "qualified joint interest" for estates of decedents dying after 1981.

Furthermore, the court reasoned that because the two statutes here are not mutually exclusive, it could not be concluded that the later statute fills the entire area of law, thereby rendering the prior statute ineffective. The court dismissed as irrelevant the Government's extensive discussion of legislative history, finding Congress' failure to change section 2040(b)(1)'s effective date dispositive of the case. The Court of Appeals' analysis rejecting both express and implied repeal has since been followed by every other court that has examined this issue. See Patten v. United States, 116 F.3d 1029 (4th Cir. 1997); Baszto v. United States, 80 AFTR 2d 97-7740 (M.D. Fla.

1997); <u>Wilburn v. United States</u>, 80 AFTR 2d 97-7553, 97-2 USTC par. 50,881 (D. Md. 1997); <u>Anderson v. United States</u>, 78 AFTR 2d 96-6555, 96-2 USTC par. 60,235 (D. Md. 1996).

## Express Repeal

Here, respondent begins by pursuing an express repeal argument. Respondent argues that because section 2040(b)(1) and (b)(2) are "interdependent", the alteration of subsection (b)(2) in 1981 operated to expressly repeal the effective date of subsection (b)(1). Yet respondent points to no language from the 1981 amendment that specifically repeals the effective date of subsection (b)(1), and indeed there is none. See <u>Patten v. United States</u>, <u>supra</u> at 1033-1034 ("Because the text of the 1981 Amendment does not mention the effective date of the 1976 Amendment, there has been no express repeal."); <u>Gallenstein v. United States</u>, <u>supra</u> at 290 ("An express repeal requires that Congress overtly state with specificity that the subsequent statute repeals a portion of the former statute."). We therefore reject respondent's express repeal argument.

## Implied Repeal

Respondent next argues that there has been an implied repeal of the effective date of section 2040(b)(1). According to respondent, when Congress amended subsection (b)(2) it also directly changed subsection (b)(1). Subsection (b)(1) no longer applied as before because it now applied to a "qualified joint interest", as defined in the amended subsection (b)(2).

Accordingly, the argument goes, the entire section 2040(b) was changed by the 1981 amendment.

"It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored." United States v. United Continental Tuna Corp., 425 U.S. 164, 168 (1976).  Nonetheless, an implied repeal may be found in certain limited circumstances:

> (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.  But, in either case, the intention of the legislature to repeal must be clear and manifest. * * * [Radzanower v. Touche Ross & Co., 426 U.S. 148, 154 (1976) (quoting Posadas v. National City Bank, 296 U.S. 497, 503 (1936)).]

## 1.  No Irreconcilable Conflict

Respondent argues that the statutory provisions in issue here are irreconcilably in conflict because under the 1981 amendment the point in time that a joint interest was created is irrelevant, whereas the 1976 amendment applied only to "qualified joint interests" created after December 31, 1976.  Respondent asserts that under the 1981 amendment, Congress "created a single, simple rule of universal application and consistent results".

Statutory provisions, however, are not irreconcilably in conflict unless there is a positive repugnancy between them or

they cannot mutually coexist. Id. at 155. The statutory
provisions here are not so irreconcilable. "[Section] 2040(b)(1)
applies to a qualified joint interest created after 1976, and
* * * [section] 2040(b)(2) redefines a qualified joint interest
for estates of decedents dying after 1981." Gallenstein v.
United States, 975 F.2d at 291; see also Patten v. United States,
supra at 1035 ("[Section 2040(b)(1)] could easily be read to
apply to a qualified joint interest created after December 31,
1976. For decedents dying before January 1, 1982, the old
definition of qualified joint interest applies, while for
decedents dying after December 31, 1981, the current definition
applies.").

    2.  Later Act Does Not Cover Whole Subject

    Moreover, it cannot be said that "the later act covers the
whole subject of the earlier one and is clearly intended as a
substitute". It is clear that this was not a comprehensive
revision of the estate tax treatment of joint interests, designed
to totally displace all prior enactments. Rather, the 1981
amendment merely changed the definition of "qualified joint
interests" contained in section 2040(b)(2) without amending the
operational rule of section 2040(b)(1). The 1981 amendment
cannot stand by itself, as it merely redefines "qualified joint
interests" and is incomplete without the operative inclusion
rules provided in section 2040(a) and (b)(1). Respondent would
have us repeal only the effective date of subsection (b)(1) while

leaving its actual substance intact.  We are not at liberty, however, to rewrite the Internal Revenue Code in that fashion.

### 3.  No Clear and Manifest Intent To Repeal

#### a.  Legislative History

Respondent further argues that the legislative history of the 1981 amendment demonstrates that Congress intended to repeal the effective date of section 2040(b)(1).  Respondent looks to the following language for support:

> In view of the unlimited marital deduction adopted by the committee bill, the taxation of jointly held property between spouses is only relevant for determining the basis of property to the survivor (under sec. 1014) and the qualification for certain provisions * * *  Accordingly, the committee believes it appropriate to adopt an easily administered rule under which each spouse would be considered to own one-half of jointly held property, regardless of which spouse furnished the original consideration.  [H. Rept. 97-201, at 160 (1981), 1981-2 C.B. 352, 378; see also S. Rept. 97-144, at 126-127 (1981), 1981-2 C.B. 412, 461.]

Respondent attempts to use this language to demonstrate that Congress intended for the 1981 amendment to repeal the effective date of section 2040(b)(1).

This argument must necessarily fail because it does not demonstrate an irreconcilable conflict or that the later act covers the whole subject of the earlier one.  Furthermore, we find nothing in this language indicating that Congress meant to alter or eliminate the effective date of section 2040(b)(1).  See Patten v. United States, supra at 1036 n.5 (noting that the

legislative history provides little guidance).[12]  Accordingly,

respondent's appeal to legislative history is unavailing.

#### b.  Potential for Abuse

Respondent also speculates about the potential for abuse in

the situation where the surviving spouse furnished the entire

consideration for the jointly held property.  Respondent posits

that the estate of the deceased joint tenant has an "election" to

purposely fail to carry its burden of proving that the survivor

furnished any of the consideration for the joint interest.  This

would result in 100 percent of the property being included in the

decedent's gross estate under section 2040(a), and, according to

respondent, a corresponding step-up in basis for 100 percent of

the property for the survivor, with no concurrent increase in

estate tax (because of the unlimited marital deduction).

Respondent argues that Congress could not have intended this

result, and, therefore, the 1981 amendment impliedly repealed the

effective date of section 2040(b)(1).

Again, respondent's argument fails to establish either an

irreconcilable conflict or that the later act covers the whole

subject of the earlier one.  Moreover, respondent simply

misapprehends the operation of the burden of proof in this

---

[12]Even if it did support respondent's argument, we would
hesitate to resort to legislative history to discern Congress'
intent, as we find no ambiguity in the statute as written.  See
Barnhill v. Johnson, 503 U.S. 393, 401 (1992) (appeals to
legislative history are well taken only to resolve statutory
ambiguity).

situation.  For estate tax purposes, section 2040(a) does raise a rebuttable presumption that the decedent furnished the entire consideration for the jointly held property.  For income tax purposes, however, section 1014(b)(9) allows a step-up in basis only for property "required to be included" in the decedent's gross estate.  Thus, in the income tax setting, which we have here, the burden of proof is on the taxpayer, who must prove that the decedent furnished the consideration for the jointly held property in order to receive a step-up in basis.  Madden v. Commissioner, 52 T.C. 845 (1969), affd. 440 F.2d 784 (7th Cir. 1971) (taxpayer cannot elect whether or not to include jointly owned property in an estate by simply failing to meet the burden of proof in order to receive a step-up in basis for income tax purposes).

### c.  Express Repeal of Subsections (c), (d), and (e)

Finally, respondent fails to address the most important indication of congressional intent concerning the implied repeal issue.  In addition to modifying the definition of "qualified joint interests" in section 2040(b)(2), the 1981 amendment expressly repealed subsections (c), (d), and (e), which had been adopted in 1978.  ERTA sec. 403(c)(3), 95 Stat. 302. Consequently, we are particularly loath to find an implied repeal of the effective date of subsection (b)(1) given the existence of

an express repeal in the same legislation.  See <u>Gallenstein v. United States</u>, 975 F.2d at 291 ("When Congress wanted to repeal a particular section of the estate tax code, it did so expressly."); see also <u>West Va. Univ. Hosps., Inc. v. Casey</u>, 499 U.S. 83, 98 (1991) ("the purpose of a statute includes not only what it sets out to change, but also what it resolves to leave alone.").

<u>Conclusion</u>

For the foregoing reasons, we hold that the "new" definition of "qualified joint interests" in section 2040(b)(2) did not expressly or impliedly repeal the effective date of section 2040(b)(1).  Thus, section 2040(b)(1) does not apply to spousal joint interests created before January 1, 1977.  Accordingly, respondent's motion for partial summary judgment will also be denied.

To reflect the foregoing,

<u>Appropriate orders</u>

<u>will be issued</u>.