T.C. Memo. 2002-164

UNITED STATES TAX COURT

WILLIAM F. MIDDLETON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11580-97.            Filed June 28, 2002.

William F. Middleton, pro se.

<u>Roger W. Bracken</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income tax and additions to tax and
penalties as follows:

|  |  | Additions to Tax | Penalties | |
|  |  | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6662(a) | 6663(a) |
| 1989 | $12,411 | --- | --- | $9,308 |
| 1990 | 39,796 | --- | --- | 29,847 |
| 1991 | 50,239 | $12,957 | $84 | 37,366 |

All section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The issues remaining[1] for our consideration are: (1) Whether, for 1990 and 1991, petitioner is entitled to Schedule C, Profit or Loss From Business, deductions in excess of those allowed or conceded by respondent; (2) whether petitioner is liable for the section 6663(a) fraud penalty for 1990 or 1991; (3) alternatively, whether petitioner is liable for the section 6662(a) accuracy-related negligence penalty for 1990 or 1991; (4) whether petitioner is liable for the section 6662(a) accuracy-related negligence penalty for 1991 with respect to the portion of the income tax deficiency that involves the omission of interest income or a claimed loss from the sale of a taxi; and

---

[1] Respondent conceded the income tax deficiency and the sec. 6663(a) penalty for petitioner's 1989 tax year. For the 1991 taxable year, respondent conceded that petitioner is entitled to Schedule C deductions in addition to those allowed in the notice of deficiency. For 1991, petitioner claimed $254,787 in deductions on his Schedule C, and respondent, in the statutory notice of deficiency, allowed $112,023. During pretrial activity, respondent conceded that, in addition to those allowed in the notice of deficiency, petitioner is entitled to $45,184 of business deductions.

(5) whether petitioner is liable for additions to tax under section 6651(a)(1) for 1991.

FINDINGS OF FACT[2]

Petitioner resided in Charles Town, West Virginia, when his petition was filed with this Court. During the taxable years under consideration, petitioner owned and operated a taxi cab business in Montgomery County, Maryland (the county). Pursuant to oral agreements, petitioner leased taxi cabs (taxis) to independent drivers for a daily fee in a range of $55.00 to $97.00. The driver/lessees paid their own operating expenses, including gasoline. Petitioner maintained a daily record of the lease of taxis, and the drivers were required to settle their accounts on a weekly basis. During 1989 and 1990, petitioner received $8,812 and $129,136, respectively, from the drivers for the lease of taxis.

Petitioner also contracted with the county to provide Medicaid recipients with taxi service to and from approved locations, such as doctors' offices and rehabilitation centers. Under the agreement, the county would fully reimburse petitioner for amounts specified on his invoices. In addition to the reimbursements, the county agreed to pay petitioner 8 percent of

_____

[2] The parties' stipulation of facts and exhibits is incorporated by this reference.

his total reimbursements as an administrative fee.  Petitioner defrauded the county by submitting false invoices.

During 1989, petitioner received $42,953.82 of Medicaid payments from the county.  During 1990, the county paid petitioner $219,656.68 in Medicaid payments, of which $17,572 represented administrative fees.  Petitioner intentionally failed to report the income he received from the taxi leasing and Medicaid services on his original 1989 and 1990 income tax returns.  In addition, petitioner's 1989 and 1990 original income tax returns did not reflect either activity, and he reported only a relatively small amount of income from wages and interest income.

At the time petitioner's 1991 income tax return was due (April 15, 1992), he had been under an indictment (since January 1992) for Medicaid fraud and obstruction of justice.  During 1991, the office of the attorney general for the State of Maryland subpoenaed petitioner's records, including but not limited to, financial documents, bank statements, canceled checks, tax returns and income and expense ledgers.  Although petitioner requested and was given an extension for the purpose of photocopying his records, petitioner disregarded the subpoena, attempted to conceal his activities, and only provided limited documentation to the attorney general's office.  Accordingly, a search warrant was obtained, and petitioner's records were

seized, including but not limited to, income and expense journals, bank statements, canceled checks, and other incriminating evidence. Petitioner pleaded guilty to the charges on October 13, 1992, and he was sentenced to 3 years of incarceration, with all but 1 year suspended.

During 1993, the State of Maryland informed the Internal Revenue Service of petitioner's Medicaid fraud. During April 1994, after he had been indicted and pleaded guilty to Medicaid fraud and obstruction of justice, petitioner, with the assistance of an accountant, filed amended income tax returns for 1989 and 1990 and a delinquent 1991 income tax return. Petitioner, on his amended 1989 return, reported gross receipts of $44,942 from his taxi business, which purported to include the Medicaid payments from the county. On his amended 1990 return, petitioner reported gross receipts of $145,557 from his taxi business, which purported to include the Medicaid payments from the county. Also on his amended 1990 return, petitioner claimed $211,875 in deductions on a Schedule C. On his late filed original 1991 income tax return, petitioner reported $263,912 of gross income, which purported to include the Medicaid payments from the county. Also on his original 1991 tax return, petitioner claimed $254,787 in taxi business deductions.

In addition, petitioner claimed a loss of $ 1,490 from the sale of a taxi. Petitioner did not sell a taxi during 1991.

After petitioner filed his amended 1989 and 1990 returns and his original 1991 return, respondent was forced to summons petitioner's records to verify the income and deductions reported by petitioner. The summonsed records generally did not agree with petitioner's tax returns. In addition, records provided by petitioner to respondent's agent were not properly organized or categorized. Petitioner's 1990 records contained duplications and personal expense receipts. Due to the discrepancies and poor records, respondent's agent reconstructed petitioner's 1990 income by means of a bank deposit analysis. Petitioner's deductions were determined by means of analyzing the records summonsed and provided by petitioner.

Respondent's bank deposits reconstruction of petitioner's income revealed that petitioner had unexplained deposits which petitioner omitted from his original 1990 return. Respondent's determination for petitioner's 1990 income was that he failed to report specific identified gross receipts of $17,572 from Medicaid administrative fees and $129,136 from taxi leasing.

Respondent's agent was able to verify $127,879 of petitioner's claimed deductions of $211,875 for 1990. With respect to 1991, respondent's agent was able to verify $112,023 of the $254,787 petitioner claimed as business deductions. After the petition was filed, based on petitioner's further substantiation, respondent allowed an additional $45,184 in taxi

business deductions for the 1991 taxable year.  Accordingly, for 1991, respondent allowed a total of $157,207 of the $254,787 in deductions claimed by petitioner on the 1991 return.

## OPINION

The issues we consider arise from circumstances surrounding petitioner's criminal conviction for Medicaid fraud.  Prior to his indictment, petitioner's 1989 and 1990 Federal income tax returns did not reflect that he was engaged in the taxi-leasing business or that he received payments for Medicaid related services.  Petitioner's 1991 return was due a short time after his indictment.  Following the acceptance of his plea of guilty, petitioner, during 1994, filed amended 1989 and 1990 returns and a delinquent 1991 return.  The above events were the motivation for respondent's examination of petitioner's returns, resulting in a determination that petitioner had understated income for 1989 and 1990.  Respondent also determined that a portion of petitioner's claimed deductions on his amended returns for 1989 and 1990 and on his 1991 return should be disallowed.  The fraud penalty was determined for all 3 years.  For 1989 and 1990, the fraud penalty was attributable to respondent's determination that petitioner failed to report all of his income.  The determination of the fraud penalty for 1991 was based on respondent's determination that petitioner intentionally overstated his deductions.

After this case was commenced, petitioner and respondent met and exchanged information and documents which resulted in respondent's concession of the income tax deficiency and the section 6663(a) fraud penalty for petitioner's 1989 tax year. The remaining issues we must consider are (1) whether petitioner is entitled to Schedule C deductions in excess of those allowed by respondent; (2) whether petitioner is liable for the fraud penalty for 1990 or 1991; (3) as an alternative to fraud, whether petitioner is liable for the negligence penalty for 1990 or 1991; (4) for 1991, whether petitioner is liable for the negligence penalty for the omission of interest income and/or claiming a loss from the sale of a taxi; and (5) whether petitioner is liable for a late-filing addition to tax for 1991.

## I.   Is Petitioner Entitled to Business Deductions in Excess of the Amounts Allowed by Respondent?

Petitioner claimed business deductions of $211,875 and $254,787 for his 1990 and 1991 tax years.  Respondent's agent examined records provided by petitioner and allowed petitioner business deductions of $127,879 and $157,207 for the 1990 and 1991 tax years, respectively.  Accordingly, petitioner's business deductions in the amounts of $83,996 and $97,580 for 1990 and 1991, respectively, remain in dispute.

Deductions are strictly a matter of legislative grace, and taxpayers must comply with specific requirements for any deduction claimed.  See INDOPCO, Inc.  v. Commissioner, 503 U.S.

79, 84 (1992). Petitioner must show that respondent's determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 162(a) permits a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Expenses that are personal in nature are generally not allowed as deductions. Sec. 262(a). A taxpayer is required to maintain records sufficient to establish the amount of his income and deductions. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a),(e), Income Tax Regs.

Petitioner contends that he is entitled to the full amount of deductions claimed. Petitioner, however, did not show entitlement to business deductions in excess of the amounts allowed by respondent. At trial and on brief, petitioner generally attempted to explain the deductions claimed for 1990 and 1991. Petitioner's explanations were insufficient to either show error in respondent's determination or substantiate entitlement to more deductions in excess of the amounts already allowed by respondent.

We must note that testimony during the trial revealed that respondent's agent had given petitioner the "benefit of the doubt" and that some deductions were allowed by respondent without thorough substantiation or based on a pattern of

evidence.  Accordingly, we hold that petitioner is not entitled to Schedule C business deductions in excess of $127,879 and $157,207 for the taxable years 1990 and 1991, respectively.

II.  Is Petitioner Liable for the Fraud Penalty for 1990?

Section 6663(a) provides for a 75-percent penalty on any part of an underpayment that is due to fraud.  Respondent bears the burden of showing by clear and convincing evidence that an underpayment exists for the year in issue and that it is due to fraud.  Sec. 7454(a); Rule 142 (b).  Fraud has been defined as an intentional wrongdoing designed to evade tax believed to be owing.  Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601.  The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977).  Fraud is not to be imputed or presumed.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970).

Because fraud can rarely be shown by direct proof of a taxpayer's intention, it may be shown by means of circumstantial evidence and reasonable inferences drawn from the facts.  Spies v. United States, 317 U.S. 492 (1943); Bradford v. Commissioner, supra; Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).  The taxpayer's entire course of conduct may establish the requisite fraudulent intent.  Stone v. Commissioner, supra.  Moreover, the intent to conceal or mislead may be inferred from a pattern of conduct.  Spies v. United States, supra at 499.

Traditionally, certain "badges" of fraud have been considered in deciding whether the penalty applies: (1) Understatement of income, (2) lack of adequate records, (3) failure to cooperate with tax authorities, (4) concealment of assets, (5) engagement in illegal activities, (6) dealing in large amounts of cash, (7) making of implausible and inconsistent statements, and (8) the willingness to defraud another in a business transaction. Bradford v. Commissioner, supra at 307-308; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia may provide persuasive circumstantial evidence of fraud. Miller v. Commissioner, 94 T.C. 316, 334 (1990).

Respondent contends that, with respect to the original 1990 income tax return, petitioner fraudulently omitted taxi leasing and Medicaid income. At the time his original 1990 return was filed, petitioner was receiving income from his taxi-leasing business and from the county government in connection with Medicaid transportation services. Petitioner, in an attempt to conceal that income, did not report that he was involved in a taxi business or that he was being paid by the county in connection with Medicaid services.

Respondent, by means of a bank deposit analysis for 1990, has shown that petitioner's unexplained deposits far exceeded the amount of gross income reported. In addition, after petitioner's

fraudulent Medicaid activity was uncovered and he pleaded guilty to criminal charges, petitioner filed amended returns for 1989 and 1990 reflecting substantial income from the taxi business. Petitioner also claimed substantial expenses on the amended returns which, if correct, would have resulted in relatively small taxable income. For 1990, however, petitioner has been able to substantiate only $127,879 of $211,875 in deductions claimed on the amended 1990 return.

In addition to failing to report the income-producing activities and gross income to respondent, petitioner was also defrauding the county by claiming reimbursement for Medicaid transportation services that were either not performed, to unapproved locations, and/or for longer distances than traveled.

Although the 1989 year is no longer in dispute, petitioner also failed to report the fact that he operated a taxi-leasing business and/or gross income from that business on his 1989 Federal income tax return. This also shows that petitioner's intentional omissions were part of a pattern of activity to deceive.

Accordingly, we hold that respondent has shown, by clear and convincing evidence, that petitioner fraudulently omitted income on his original 1990 tax return.[3]

---

[3] Petitioner's 1990 underpayment, for purposes of sec. 6663, is equal to the unreported income from the taxi leasing, administrative Medicaid payment, less the amount of business deductions allowed, including any deductions allowed after the issuance of the notice of deficiency. The parties will be

III.  Is Petitioner Liable for the Fraud Penalty for 1991?

For his 1991 tax year, petitioner did not file a return until 1994, after he had already pleaded guilty to Medicaid fraud.  Respondent, in the notice of deficiency, did not determine that petitioner had understated gross income.  On his 1991 return, petitioner reported gross income of $263,912 (including a $24,826 administrative Medicaid fee) and deductions of $254,787, resulting in a reported net profit from his taxi business of $9,125.  Respondent, in the notice of deficiency, allowed $112,023 of the $254,787 in claimed business deductions. Accordingly, respondent determined that the underpayment was attributable to the disallowed deductions and that the underpayment was subject to the 75-percent fraud penalty of section 6663(a).

Petitioner hired a certified public accountant to assist him in the preparation of his 1991 return.  For 1989 and 1990, petitioner's records were inadequate, disorganized, and may have contained duplications and personal expenses.  For 1991, petitioner's records had been reconstructed by his accountant from available information.  Respondent has not shown that petitioner intentionally and knowingly overstated his deductions for 1991.  Although petitioner was unable to adequately substantiate slightly more than 39 percent of the claimed

required to compute the underpayment under Rule 155 of the Tax Court Rules of Practice and Procedure.

business deductions, that failure, on this record, does not rise to the level of being fraudulent.

Accordingly, we hold that respondent has failed to show by clear and convincing evidence that petitioner is liable for the 75-percent fraud penalty under section 6663(a).

## IV.  Is Petitioner Liable for the Failure to File Penalty for Taxable Year 1991?

Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax required to be shown on a return for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent.  A taxpayer may avoid this addition to tax if it can be shown (1) that the failure did not result from willful neglect, and (2) that the failure was due to reasonable cause.  See United States v. Boyle, 469 U.S. 241, 245 (1985).

Here, petitioner does not deny that he failed to file his 1991 income tax return until 1994.  The circumstances in which petitioner found himself when the 1991 return was due (April 15, 1992) were precarious; i.e., petitioner had been indicted for Medicaid fraud and he had failed to report his business income in returns filed for 1989 and 1990.  Accordingly, although petitioner has provided a reason for intentionally failing to file, he has not provided a reason for which his failure to file can be excused.

Accordingly, we hold that petitioner is liable for a 25 percent section 6651 addition to tax for 1991.

V. <u>For 1991, is Petitioner Liable for the Negligence Penalty With Respect to Omitted Interest Income, a Claimed Loss From the Sale of a Taxi, or Unsubstantiated Business Deductions</u>?

On his delinquently filed 1991 return, petitioner claimed a $1,490 loss from the sale or involuntary conversion of a taxi. In the notice of deficiency, respondent determined an $84 accuracy-related negligence penalty under section 6662 attributable to those two items for 1991. Respondent also determined, as an alternative to the fraud penalty for 1991, that petitioner was liable for an accuracy-related negligence penalty under section 6662(b)(1) or (c). Because we have decided that petitioner is not liable for the fraud penalty for 1991, we consider whether petitioner is liable for the negligence penalty with respect to unsubstantiated Schedule C business deductions for 1991.

Section 6662 provides that if any portion of any underpayment is due to negligence, then a taxpayer will be liable for a penalty equal to 20 percent of the underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence. See sec. 6662(a) and (b)(1). Negligence is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." <u>Korshin v. Commissioner</u>, 91 F.3d 670, 672 (4th Cir. 1996). As pertinent here, "negligence" includes the failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and also includes any failure to keep

adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" has been categorized as any careless, reckless, or intentional disregard. Sec. 6662(c).

A taxpayer may avoid the accuracy-related penalty by showing that (1) there was reasonable cause for the underpayment and (2) he acted in good faith with respect to such underpayment. See sec. 6664(c). Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances, and most importantly, the extent to which he attempted to assess his proper tax liability. See Neely v. Commissioner, 85 T.C. 934 (1985); Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.

It is petitioner's responsibility to establish that he is not liable for the accuracy-related negligence penalty imposed by section 6662(a). See Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989).

In attempting to show that he had reasonable cause, petitioner argues that he relied on his accountant who assisted him in preparing his 1991 return. Under certain circumstances, reliance on the advice of a competent adviser can be a defense to the accuracy-related penalty. United States v. Boyle, supra at 252); Zfass v. Commissioner, 118 F.3d 184 (4th Cir. 1997); sec. 1.6664-4(b)(1), Income Tax Regs.

However, reliance on professional advice, standing alone, is

not automatically a defense to negligence, but it is one factor to be considered. See <u>Freytag v. Commissioner</u>, 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). It must be established that the reliance was reasonable, in good faith, and based upon full disclosure. <u>Ewing v. Commissioner</u>, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); <u>Metra Chem Corp. v. Commissioner</u>, 88 T.C. 654, 662 (1987); <u>Pritchett v. Commissioner</u>, 63 T.C. 149, 175-176 (1974).

In his defense, petitioner claims that he did not have a great deal of time to file the 1991 return by April 1994. This was due to respondent's examination that followed petitioner's plea of guilty to Medicaid fraud. Petitioner hired an accountant who reconstructed petitioner's records because adequate records had not been maintained for his taxi-leasing business and Medicaid activities. Petitioner's accountant reconstructed petitioner's tax reporting position from the records available and from information provided by petitioner.

With respect to the income side of petitioner's 1991 reporting, respondent made no adjustments with the exception of $1,313 of interest income. With respect to petitioner's deductions, however, respondent disallowed a claimed $1,490 loss from the sale or involuntary conversion of a taxi. Respondent, in the notice of deficiency, allowed $112,023 of the $254,787 petitioner claimed as business deductions. During pretrial

activity, respondent conceded that petitioner was entitled to additional business deductions of $45,184, for a total allowance of $157,207.

With respect to the $1,490 claimed loss, petitioner contended that he provided his accountant with information that a taxi had been set on fire during an unlawful use, but that he is unsure how the accountant used that information. Concerning petitioner's $97,580 ($254,787 claimed less $157,207 allowed) of unallowed business deductions for 1991, petitioner was not able to show supporting documentation or provide other evidence that would show that he was entitled to more deductions than allowed by respondent.

Petitioner did contend that his business information or records were unavailable due to the criminal prosecution and respondent's examination. Petitioner has not shown that he was denied access to the information and records used by the State in his prosecution. The State of Maryland investigator testified that petitioner's records that were seized by the State were available to petitioner at all times.[4] In addition, the record in this case reflects that respondent's examination was extensive and that respondent was reasonable in the allowance of deductions

---

[4] The investigator also testified that petitioner lied to him during the investigation for Medicaid fraud. In addition, the investigator stated that petitioner had concealed records from the State grand jury.

based upon the information provided by petitioner. In that regard, petitioner has not shown that respondent should have allowed more based on any record that is available to petitioner.[5]

Finally, petitioner argues that his reliance on his accountant was reasonable. Petitioner contends that he simply provided the information to his accountant and that the accountant decided the amount of deductions to which petitioner was entitled for 1991. Petitioner, however, did not corroborate this contention, and he failed to present his accountant as a witness to show that his reliance was reasonable. See Zfass v. Commissioner, supra at 189.

More importantly, petitioner has admitted that (1) the preparation of his 1991 return was accomplished in a rush and (2) he may not have provided his accountant with complete information. Finally, petitioner was unable to substantiate almost 40 percent of the business deductions he claimed. Therefore, petitioner's claim of reliance was, in the circumstances of this case, unreasonable. Accordingly, we hold that petitioner is liable for the accuracy-related negligence penalty for 1991 on the underpayments attributable to the omitted

---

[5] Petitioner also contended that the State of Maryland had accepted his amended and 1991 State income tax returns without change. Petitioner has not shown, however, how that fact (if it is a fact) would show that petitioner was reasonable in connection with the filing of his Federal income tax returns.

interest income, claimed loss, and unsubstantiated deductions.

We have considered all other arguments advanced by the parties and to the extent that we have not addressed these arguments, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

REPORTER'S NOTE: THIS MEMORANDUM OPINION WAS MODIFIED BY ORDER DATED NOVEMBER 7, 2002.